ZOFIA BIEL, Independent Adm'r of the Estate of Jan Biel, Deceased, Plaintiff-Appellant, v. THE CITY OF BRIDGEVIEW et al., Defendants (Lyons Electric Co., Inc., et al., Defendants-Appellees).

First District (2nd Division)   No. 1—00—3689

Opinion filed November 26, 2002.

Marvin A. Brustin and Milo W. Lundblad, both of Marvin A. Brustin, Ltd., of Chicago, for appellant.

Howard K. Preiss II and Basileios Katris, both of Tressler, Soderstrom, Maloney & Priess, of Chicago, for appellees.

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff-appellant, Zofia Biel, independent administrator of the estate of Jan Biel, brought an action to recover against defendants, City of Bridgeview and William Hamman, and defendants-appellees Lyons Electric Co., Inc. (Lyons), and Pinner Electric, Inc. (Pinner),[1] when Jan Biel was struck and killed by a car while crossing the street. Plaintiff claims that defendants' negligence caused a streetlight to be inoperable which, if operable, would have illuminated the location where Jan Biel was killed. Such negligence, according to plaintiff, was a contributing proximate cause of Jan Biel's death. Defendants moved for summary judgment on the basis that the inoperable streetlight only created a condition and could not have proximately caused the accident as a matter of law. The summary judgment motion was

---

[1]Hereinafter "defendants" means only defendants-appellees, Lyons and Pinner.

originally denied, but based on a motion to reconsider, the trial court reversed itself and entered summary judgment in favor of defendants. Plaintiff now appeals the trial court's summary judgment ruling.

Two issues are raised on review: whether the trial court properly granted summary judgment in favor of defendants on the ground that the nonfunctioning streetlight was only a condition and not a proximate cause of the accident; and whether the trial court abused its discretion by allowing defendants' motion to reconsider the denial of summary judgment in their favor. We state the following background facts.

Defendants are electrical contracting companies. Plaintiff's first amended complaint alleged the City of Bridgeview contracted with defendants to make repairs on particular streetlights within the City. Prior to August 21, 1995, defendants repaired streetlights on 79th Street west of Harlem Avenue, Bridgeview, Illinois.

On August 21, 1985, at approximately 11 p.m., Jan Biel was killed when he was struck by a car driven by William Hamman. At the time of the accident, Hamman was traveling westbound on 79th Street just past the intersection of 79th Street and Harlem Avenue, Bridgeview, Illinois. Hamman testified that he knew that one streetlight was out which provided illumination over the median area of 79th Street. He also stated that the marquee signs and parking lot lights of surrounding stores, including a K mart, were turned off. As he was driving approximately 30 miles per hour on 79th Street, just past the intersection of 79th Street and Harlem Avenue, Hamman stated that he moved into the left-hand lane. At that point, something hit the windshield. Hamman pulled to the side of the road, called his wife, told her he may have hit someone, and ran down to where the accident had occurred. Hamman said that he noticed that Biel's clothing was dark. After the accident, Hamman told police that he never saw Jan Biel prior to the collision.

Plaintiff's first amended complaint alleged that the City of Bridgeview contracted with defendants to manage, maintain, and control "a certain light post which was intended to provide sufficient lighting to that portion of 79th Street *** near its intersection with Harlem Avenue." The complaint further alleged that it then became defendants' duty to manage, maintain, and control "the aforementioned light pole so as to provide sufficient lighting to that portion of 79th Street *** near its intersection with Harlem Avenue." Notwithstanding this duty, the complaint stated that defendants were guilty of the following negligent acts or omissions:

> "(a) carelessly and negligently failed to inspect said light pole at all reasonable times;

(b) carelessly and negligently failed to maintain said light pole;

(c) carelessly and negligently failed to create and implement procedures to inspect that aforementioned light pole;

(d) otherwise carelessly and negligently owned, operated, managed, maintained and controlled said light pole."

At all relevant times, the complaint alleged that the aforementioned light post was not illuminated. As a direct and proximate result of the defendants, "in failing to illuminate the said light post," the complaint stated the motor vehicle driven by Hamman struck and killed Jan Biel as he crossed 79th Street.

Glenn Jendrzejewski, an eyewitness to the accident, testified that he was familiar with 79th Street and that he lived in a trailer apartment at 7858 South Harlem Avenue, Bridgeview, Illinois. When he saw the accident, he was sitting on a white chair in front of his apartment. The accident occurred on a clear, dark night at approximately 11 p.m. He indicated that the streetlight in the vicinity of the accident was "out" and that it had been out for approximately a year. In the area where the particular light was not illuminated, the area was dark. The closest crosswalk was at the intersection of 79th Street and Harlem Avenue. According to Jendrzejewski, the accident occurred about a half a block west of this crosswalk on 79th Street.

Jendrzejewski testified that, prior to crossing 79th Street, Jan Biel stumbled and fell over a chain-link fence and then fell several more times on the sidewalk. He stated that Biel appeared to be drunk or on heavy medication. According to Jendrzejewski, Biel was wearing a dark green shirt, green pants, and dark socks. Biel then went over to a light pole that had a 40-mile-per-hour speed limit sign affixed to it. For a short time, Biel leaned against the pole. Jendrzejewski testified that Biel began crossing 79th Street. As Biel crossed, he was wobbling back and forth as he made it halfway across the street. Biel then stood in the middle of the street for about 10 seconds. A car approached, and Jendrzejewski said that he saw Biel get hit by the front end of the vehicle on the driver's side. Biel flew about five feet into the air. At that time, Jendrzejewski ran inside and dialed 911. Prior to impact, Jendrzejewski said, the car did not slow down.

Herman Caldwell, also an eyewitness to the accident, testified that he lived in a trailer at 7858 South Harlem Avenue, Bridgeview, Illinois. He lived in the same double trailer as Glenn Jendrzejewski. He stated that he was very familiar with 79th Street west of Harlem Avenue. On the night of the accident, Caldwell stated, he witnessed the accident while sitting in a lawn chair next to Jendrzejewski. He testified that it was a nice summer evening, visibility was clear, and the streets were dry. Caldwell further stated that all of the streetlights

on the north side of 79th Street were working on the evening of the accident with the exception of one, the light pole with the 40-mile-per-hour speed limit sign. Caldwell testified that the light had been out for at least a few months.

According to Caldwell, he was sitting in front of Jendrzejewski's trailer when he first saw Biel. Biel appeared very drunk. He said that Biel kept falling over a chain-link fence and onto the sidewalk. Caldwell said he saw Biel stumble and fall at least four or five times. Biel then leaned on the lamppost with the burned out streetlight and the 40-mile-per-hour speed limit sign. Caldwell said he asked Biel after he fell if he would like to sit down for a few minutes and if Biel would like a ride home. Biel, who was slurring his words, responded no thank you. Biel waited at the lamppost for about 20 seconds.

Caldwell testified that Biel began crossing 79th Street at the light pole with the 40-mile-per-hour speed limit sign on it. Prior to crossing, Caldwell said, Biel looked east toward Harlem Avenue for oncoming traffic. He then began staggering into the street. When Biel had moved about four feet into the street, he was hit by a fast-moving, oncoming vehicle. Biel's body flew high into the air and landed near the double yellow line next to the left-hand lane. After the accident, Caldwell said, he ran out into the street to block traffic. According to Caldwell, the left front headlight on the vehicle was out prior to the accident.

Caldwell also said that there were no crosswalks at the place where Biel was crossing. However, he did testify that he had noticed other people crossing 79th Street where the accident occurred. He also stated that he had crossed the street there and that he observed others crossing at that location daily.

James O'Donnell, a doctor of pharmacy and expert in alcohol effects, testified that he examined documents related to the alcohol levels in the decedent, Jan Biel, at the time of the accident. O'Donnell opined that Biel was severely intoxicated on August 21, 1995, with a blood-alcohol level of .258. O'Donnell based his opinion on the "alcohol test" taken from Biel at Christ Hospital and the testimony of the eyewitnesses who saw him stumbling prior to the accident. He further stated that a person with a blood-alcohol level of .258 would be severely impaired and would have difficulty walking.

In her complaint, plaintiff alleged that defendants were negligent because they carelessly and negligently failed to inspect, maintain, and illuminate the streetlight, and these negligent acts were a proximate cause of Jan Biel's death. As noted by plaintiff, defendants initially filed motions in the trial court for summary judgment on the ground that failure to repair the streetlight at issue was only a condition and not a proximate cause of Jan Biel's death. The motions were

stricken by Judge Philip Bronstein in an order entered June 4, 1999, because counsel for defendants failed to appear. Defendants then filed a second motion for summary judgment on the "cause vs. condition analysis." The second summary judgment motion was denied by Judge Sophia Hall on December 6, 1999.

■ On August 3, 2000, defendants sought leave to file a motion to reconsider Judge Hall's ruling entered on December 6, 1999. On the same day, leave was granted to file the motion, but Judge Donald O'Brien limited the motion to the issue of " 'cause vs. condition' and the applicability of [*First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 720 N.E.2d 1068 (1999),] and other cases on the issue subsequent to 12/6/99." Also on August 3, 2000, defendants filed their motion to reconsider the December 6, 1999, order on two grounds: that the trial court ruled on summary judgment without the benefit of the supreme court's decision in *Galman*, cited above; and that Caldwell's and O'Donnell's depositions were not available for the court's consideration in defendants' prior motion for summary judgment. On September 20, 2000, Judge Sophia Hall granted defendants' motion to reconsider on the ground that she had misapplied the law and entered summary judgment in defendants' favor. Plaintiff appeals the entry of the motion to reconsider and the summary judgment order in favor of defendants. We first address whether the trial court properly entered summary judgment on the basis that the inoperable streetlight was only a condition and not a proximate cause of Biel's death. The supreme court has stated:

"Summary judgment is *** proper only when the resolution of a case hinges on a question of law and the moving party's right to judgment is clear and free from doubt. [Citation.] In considering a motion for summary judgment, the court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party. [Citation.] If the court finds that the record contains any material issues of genuine fact, the motion for summary judgment must be denied. A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts. [Citation.] As in all cases involving summary judgment, we review the evidence in the record *de novo*." *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11, 615 N.E.2d 736 (1993).

■ The supreme court has also held: "To recover damages based upon a defendant's alleged negligence, a plaintiff must allege and prove that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of

the plaintiff's injuries. [Citation.]" *Galman*, 188 Ill. 2d at 256. In the instant case, plaintiff's first amended complaint alleges the elements set forth above. In granting summary judgment, however, the trial court found that defendants' failure to replace the inoperable streetlight was, as a matter of law, a condition as opposed to a proximate cause of Biel's injury.

■ In *Galman*, the supreme court held: "Illinois courts draw a distinction between a condition and a cause." *Galman*, 188 Ill. 2d at 257. The court further stated:

> "Indeed, if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Briske v. Village of Burnham*, 379 Ill. 193, 199[, 39 N.E.2d 976] (1942); *Merlo v. Public Service Co.*, 381 Ill. 300, 316[, 45 N.E.2d 665] (1942); see also *Thompson* [*v. County of Cook*,] 154 Ill. 2d [374,] 383[, 609 N.E.2d 290 (1993)]. The test that should be applied in all proximate cause cases is whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligence. [Citation.]" *Galman*, 188 Ill. 2d at 257.

■ The *Galman* court also identified a second test for determining proximate cause which was established in *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455, 605 N.E.2d 493 (1992). Specifically, it stated:

> "In *Lee* the court held that the term 'proximate cause' describes two distinct requirements: cause in fact and legal cause. [Citation.] Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the injury or damage. [Citation.] A defendant's conduct is a cause in fact of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury. [Citation.] A defendant's conduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred. [Citation.] 'Legal cause,' by contrast, is essentially a question of foreseeability. [Citation.] The relevant inquiry here is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct. [Citation.]" *Galman*, 188 Ill. 2d at 257-58.

The court noted that the parties in that case were under the mistaken impression that the two tests were incompatible. Instead, the supreme court held that although *Briske*, *Merlo*, and *Thompson* employed a different vocabulary than *Lee*, all of the cases asked the same question: "Was defendant's negligence a material and substantial element in bringing about the injury, and, if so, was the injury of a

type that a reasonable person would see as a likely result of his or her conduct?" *Galman*, 188 Ill. 2d at 258-59. It went on to conclude that, "[f]ar from conflicting, *Briske, Merlo, Thompson,* and *Lee* uniformly embrace the traditional proximate cause test that has governed Illinois for the better part of this century. [Citation.]" *Galman*, 188 Ill. 2d at 258-59.

With the above standard in place, we must determine whether the requirements of proximate cause, specifically cause in fact and legal cause, have been satisfied in the instant case.

■ Based upon the pleadings and depositions in this record, we find that a genuine issue of material fact exists as to whether defendants' conduct in failing to replace the streetlight was a material element and a substantial factor in Jan Biel's death. We note that, "[w]here reasonable minds could differ, whether the defendant's conduct was of such a substantial factor in bringing about the plaintiff's injury is for the jury to decide." *Lee*, 152 Ill. 2d at 455. At the very least, from the testimony presented, it can be inferred that Biel's death would not have occurred but for an inoperable streetlight above the accident location, and that Biel may have avoided the accident in the event the streetlight was illuminated. Further, Jendrzejewski and Caldwell both testified that the streetlight was inoperable where Biel elected to cross. They also said that the lights of the K mart and other surrounding businesses were turned off and that the area where Biel crossed 79th Street was dark. Based upon these facts, we conclude that a genuine issue of material fact exists as to whether defendants' conduct was a material element and a substantial factor in bringing about Biel's death.

We also find that a material question of fact exists as to whether defendants' failure to repair, maintain, and illuminate the streetlight in question was the legal cause of Jan Biel's death. As we noted above, legal cause is essentially a question of foreseeability. *Galman*, 188 Ill. 2d at 258. "The relevant inquiry here is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Galman*, 188 Ill. 2d at 258.

Here, defendants suggest that they could not have reasonably foreseen that "allowing an inoperative streetlight to exist on 79th Street mid block would likely result in plaintiff's decedent Jan Biel: (1) failing to utilize nearby crosswalks; (2) deciding to cross the street mid block; (3) at a location where the streetlight was out; (4) wearing dark clothing; (5) being extremely intoxicated; (6) staggering and not able to control his own movement; and (7) standing in the middle of 79th Street in such a condition for at least 10 seconds." According to defendants, as a matter of law, the independent acts of Jan Biel were not reasonably foreseeable. We disagree.

While Jan Biel's conduct may have been contributorily negligent, we cannot say as a matter of law that Biel's death was not foreseeable to defendants, which failed to maintain, repair, and illuminate the streetlight at the location where Biel crossed 79th Street. As we noted above, Jendrzejewski and Caldwell both testified that the streetlight was "out" where Biel elected to cross. There seems to be no dispute that defendants had contracted with the City of Bridgeview to maintain the streetlight at issue. Additionally, Jendrzejewski said that the light had been out for approximately one year. Caldwell testified that the light had been out for at least a few months. Both Jendrzejewski and Caldwell said that the lights of surrounding businesses had been turned off, making the area very dark. Further, Caldwell testified that he crossed 79th Street where Biel crossed and that he had seen other pedestrians using the exact same location to cross almost daily. Based upon the testimony presented, we conclude that a question of fact exists as to whether Biel's injury was foreseeable to defendants.

Further, we are not persuaded by the city ordinances and state laws relied upon by defendants in this case. The statutes relied upon by defendants concern a pedestrian's duties to yield to drivers under certain conditions and to remain alcohol and drug free upon a street, highway, or public place. These statutory violations relate to the issue of Jan Biel's contributory negligence and not to whether it was foreseeable to defendants that the inoperable streetlight could have resulted in an injury to Biel.

In *Lee*, cited above, an intoxicated pedestrian entered a Chicago Transit Authority (CTA) right-of-way at the intersection of Kedzie Avenue and the Ravenswood railway line in Chicago. The right-of-way was posted with signs warning of danger and electric current. Also, the CTA had laid uneven-edged boards, approximately six inches apart, called "jaws," in order to inform pedestrians that the area was restricted. Despite these warnings, the pedestrian, who had a blood-alcohol level of 0.341, urinated on the third rail of the CTA railway and sustained fatal injuries. On review, the supreme court held that, despite the fact the pedestrian was intoxicated, the "decedent's intoxication was properly a consideration only with respect to his contributory negligence." *Lee*, 152 Ill. 2d at 454. In this case, Biel's conduct in violating local ordinances is a consideration in regard to his contributory negligence, not to whether it was foreseeable to defendants that the inoperable streetlight could have caused Biel's injury.

Defendants claim that the facts in this case are analogous to those in *Galman* and that, therefore, the disposition in both cases should be the same. In *Galman*, Howard Dobson drove a tanker truck for ADM

Trucking, Inc. (ADM). At about 3 p.m. on Tuesday, November 21, 1989, Dobson parked his truck mid-block on the north side of Lawrence Avenue, 41 feet from the intersection of English Street in Springfield, Illinois. Parking was prohibited on the north side of Lawrence Avenue between the hours of 7 a.m. and 6 p.m., Monday through Saturday. After Dobson parked his truck, May Phillippart, an 18-year-old French foreign exchange student, began walking south on English Street. At the intersection of English Street and Lawrence Avenue, Phillippart did not use the marked crosswalk. Instead, she walked 41 feet from the intersection plus the full length of Dobson's truck before deciding to cross Lawrence Avenue. At the front of Dobson's truck, Phillippart entered Lawrence Avenue and waited for traffic to clear. After taking 1½ slow steps into the center of the westbound lane of Lawrence Avenue, she began running across the street. At about the center line of Lawrence Avenue, Phillippart was struck by the front passenger's side of a car driven by Amanda Galman. She died from her injuries. Section 80.04 of the City of Springfield Code provided: " 'Pedestrian crossings between intersections shall be prohibited in the interest of public safety, except where there may be a marked crosswalk.' " *Galman*, 188 Ill. 2d at 255.

Following Phillippart's death, the National Health Service of France (NHSF) paid her estate $452,794.82 as compensation for medical expenses. First Springfield Bank & Trust, acting on behalf of her estate, sued Galman, Dobson, and ADM for negligence. It also sued ADM for violating section 5 of the Public Nuisance Act (Ill. Rev. Stat. 1989, ch. 100½, par. 26.(5) (now 720 ILCS 5/47—5(5) (West 1998))), which made it a nuisance to obstruct or encroach upon public highways. *Galman*, 188 Ill. 2d at 255. The jury entered a verdict, finding that Phillippart's damages totaled $1 million and that Phillippart was 45% at fault. Thus, the jury awarded First Springfield $550,000. Dobson and ADM moved to reduce the jury award by the amount paid to Phillippart's estate by the NHSF. Dobson and ADM moved for judgment notwithstanding the verdict on both counts and the motions were denied by the trial court.

The appellate court affirmed the trial court's judgment. In a dissent, Justice Steigmann concluded that Dobson and ADM were entitled to judgment notwithstanding the verdict because the illegally parked tanker truck was not the proximate cause of Phillippart's injuries. Instead, the truck was merely a condition that allowed Phillippart's injuries to occur. Dobson and ADM appealed the appellate court's judgment on several bases including the ground that the illegally parked truck was not the proximate cause of Phillippart's injuries.

The supreme court concluded that the ADM's tanker truck was a

cause in fact of Phillippart's injury because, had Dobson not parked the truck illegally on Lawrence Avenue, Phillippart's injuries almost certainly would not have occurred. *Galman*, 188 Ill. 2d at 260. However, the court found that the tanker truck was not the legal cause of Phillippart's injuries because it was not reasonably foreseeable that violating a no-parking sign and parking mid-block would result in the death of a young woman. *Galman*, 188 Ill. 2d at 261-62. Therefore, the court held that the illegally parked tanker truck was not the proximate cause of Phillippart's injuries. *Galman*, 188 Ill. 2d at 262.

In our view, *Galman* is distinguishable from the instant case. As we noted above, we find that factual questions remain as to whether the inoperable streetlight was a cause in fact of Biel's injuries. As we noted above, one could reasonably infer that defendants' failure to maintain the streetlight at issue was a material and substantial element in Biel's death and that absent defendants' conduct the injury would not have occurred. Further, unlike *Galman*, we conclude that it was foreseeable that defendants' failure to repair, maintain, and replace an inoperable streetlight might result in injury to a pedestrian crossing 79th Street at the relevant location. The foreseeability of an injury or death was supported by Caldwell's testimony that he noticed other people crossing 79th Street where the accident occurred, that he had crossed the street there, and that he observed others crossing 79th Street at that location daily. Further, Hamman testified that he never saw Biel before he struck him. Finally, there was testimony that the area where Biel was hit was dark. As a result, the facts in *Galman* are inapposite.

We conclude that the trial court's finding at the summary judgment stage that the inoperable streetlight was merely a condition and not a proximate cause of Biel's injuries was incorrect. We therefore conclude that the trial court erred in granting summary judgment in favor of defendants. As a result, we reverse the trial court's ruling in regard to the summary judgment in favor of the defendants.

Because of our finding with regard to the first issue, the question of whether the motion to reconsider was properly granted is effectively moot. The decision of the trial court is reversed.

Reversed.

CERDA and BURKE, JJ., concur.