PATRICIA ABRAMS, Indiv. and as Special Adm'r of the Estate of Georgia Sabrina White, Deceased, *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee (Henrietta Young *et al.*, Defendants).

First District (5th Division)   No. 1—01—1954

━━━━━

Opinion filed March 28, 2003.

Deer & Stone, P.C., of Chicago (Matthew B. Karchmar, of counsel), for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and David Graver, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Patricia Abrams, individually and as the special administrator of the estate of Georgia Sabrina White, appeals an order of the circuit court of Cook County granting summary judgment to the defendant City of Chicago (City) in a personal injury action. Plaintiff Dorothy Brown did not sue the City; she and defendants Henrietta Young and Gregory Jones are not parties to this appeal.

The record on appeal shows that in deposition testimony, plaintiff claimed that at 1:30 and 1:40 a.m. on November 18, 1997, she telephoned the City's 911 service, asking for an ambulance because she had gone into labor with her seventh pregnancy. Plaintiff testified that she told the operators that her contractions were 10 minutes apart and that she did not have a vehicle. According to plaintiff, the operators told her it was not an emergency case and hung up on her.

A Chicago fire department (CFD) event query record shows that a call was received from plaintiff's address at 1:47 a.m. on November 18, 1997, which lasted 1 minute and 22 seconds, was handled by a person with the initials "VH," and given a priority of 1. Vicki Hernandez, a licensed emergency medical technician and paramedic, testified that she was the "VH" referred to in the CFD record. Hernandez had been in training with the office of emergency communications (OEC) since April 1997. Hernandez had no specific recollection of the 1:47 a.m. telephone call.

Hernandez stated that a priority 1 code meant an ambulance was to be sent. Hernandez also noted that the CFD record showed that the disposition of the call was "Advised," which meant that an ambulance was not going to be sent and would be a priority 3 call. According to Hernandez, she was not responsible for entering the priority code; this was supposed to be done by the computer based on the disposition.

Hernandez testified that OEC used a system of flip cards to determine whether to send an ambulance in response to a telephone call. Hernandez believed she had a good knowledge of flip card No. 26—the card relating to pregnancy, childbirth and miscarriage—on November 18, 1997. The record shows that flip card No. 26 provided in part as follows:

"In general, primagravida patients (initial pregnancy) progress through labor much slower than multigravida (second-plus pregnancy). Therefore labor pains two minutes apart in a third pregnancy are considered more urgent than in a first pregnancy. When pains are less than two minutes apart in first pregnancy or less than five minutes apart in second-plus pregnancy, birth is considered imminent. **NOTE: Presentation of the cord, hands, or feet is a dire emergency. Often the only chance for survival of the infant is at the hospital.**

**WHEN IN DOUBT – *SEND***

| KEY QUESTIONS | | PRE-ARRIVAL INSTRUCTIONS |
|---|---|---|
| 1. Hemorrhage or not? | | a. DO NOT try to prevent birth. |
| 2. Pain or not? | | b. DO NOT try to cross legs. |
| 3. Frequency of pains? (How many minutes apart? How long?) | | c. DO NOT sit on toilet. |
| | | d. Lay down and take deep breaths with pains. |
| 4. Months pregnant? (Trimester?) | | e. Keep baby warm. |
| | | f. Turn baby on side. |
| 5. Pushing or crowning? | | g. Save all tissue passed. |
| 6. Baby conscious and breathing? | | h. Look for and direct apparatus to victim. |
| 7. Number of pregnancies? | | |

| DISPATCH PRIORITIES | |
|---|---|
| DETERMINANT | RESPONSE |
| Bleeding in third trimester. | |
| Syncope (fainting) in pregnancy. | Priority I |
| Greater than four months pregnant with pains less than five minutes apart. | |
| If pregnant and hemorrhaging. | |
| Delivery or post-partum. | |
| Pains greater than five minutes apart if private transport is immediately available. | Priority III |
| If pregnant but no hemorrhage or pain. | Priority III." |

Hernandez initially testified that if a woman called with contractions more than five minutes apart with no complications, but no way to get to a hospital, an ambulance would not be sent because it was not indicated on the flip card. Hernandez later testified that she did not know whether she would send an ambulance in such a case. Hernandez testified that the phrase "when in doubt, send" appears on all of the flip cards. Hernandez also stated that she could ask her watch commander in cases where she was unsure.

Plaintiff testified she awakened her sister, Dorothy Brown. According to plaintiff, Brown then telephoned 911 and was told that it was not an emergency. Plaintiff testified that she then decided to call Capitol Ambulance, which informed plaintiff that they did not have an available car and that it would be two to three hours before they could send a car for plaintiff.

Brown testified that plaintiff awakened her after the first 911 call, she told plaintiff to call again, and she was present for the second call. Brown testified that she then telephoned 911, was told that it was not an emergency, and she was given the telephone number of an ambulance service. Brown believed the name of the service was Capitol. Brown testified that she then called Capitol Ambulance and was told they did not have an ambulance available. According to Brown, Capitol Ambulance did not indicate that they would have an ambulance available later.

A CFD event query record shows that a call was received from plaintiff's address at 1:53 a.m. on November 18, 1997, which lasted 48 seconds, was handled by a person with the initials "AC," and was disposed of as "Advised," though again showing a priority code of 1. Antoinette Cacioppo testified that she was the "AC" referred to in this CFD record. Like Hernandez, Cacioppo had been in training with the OEC since April 1997. According to Cacioppo, 911 call takers had to be licensed emergency medical technicians. Cacioppo was also aware of the "when in doubt, send" policy.

Plaintiff testified that after being refused by Capitol Ambulance, she telephoned her friend, Henrietta Young, who agreed to leave work to take her to the hospital. According to plaintiff, Young arrived approximately five minutes later to transport plaintiff and Brown to the hospital. Plaintiff testified that Young generally drove at the speed limit and obeyed traffic signals, but she went through a red light at King Drive and Pershing, holding down her car horn.

At the intersection of King Drive and Pershing, Young's car became involved in a collision with a car driven by Gregory Jones. Plaintiff estimated that Jones had been traveling between 75 and 80 miles per hour. In a handwritten statement, Jones admitted that he had a beer,

two double shots of rum, and crack cocaine before getting behind the wheel of his car. The collision ejected Brown from Young's car. Plaintiff testified that her head went into the windshield of the car. Plaintiff testified that she lapsed into a coma for two weeks shortly after delivering her child, Georgia Sabrina White; when she regained consciousness, she learned that the child was dead. Plaintiff also required surgery to have her right ovary removed and a rod and screws put in her right leg. Plaintiff was in a wheelchair for a year. It has been recommended that plaintiff undergo surgery to put a plate in her forehead.

Daniel Bull, the 911 dispatcher who dispatched fire equipment to the scene of the collision at 2:19 a.m., testified that he would have sent an ambulance to plaintiff in the first instance, as private transportation was unavailable.

An affidavit by Dr. Frank Baker, submitted by plaintiff as an expert in emergency medical care, opined to a reasonable degree of medical certainty that the applicable standard of care required the CFD to dispatch an ambulance in this case, and that the CFD's failure to do so demonstrated a conscious disregard for plaintiff's safety. The Baker affidavit also opined that, had an ambulance been sent, the transportation by trained professionals probably would not have resulted in the collision that injured plaintiff and caused her child to be stillborn.

Abrams filed suit against the City, Young and Jones on November 18, 1998. Brown was added as a plaintiff bringing claims against Young and Jones a year later. On December 3, 1999, Abrams voluntarily dismissed her claim of ordinary negligence against the City, leaving allegations of willful and wanton misconduct. Abrams' claim against Young was dismissed with prejudice on December 5, 2000, as the result of a settlement with the estate of Georgia Sabrina White.

The City filed its motion for summary judgment on December 14, 2000, arguing that the City owed no duty to transport plaintiff and that its failure to do so was not the proximate cause of plaintiff's injury and her child's death. On April 20, 2001, the trial court entered an order granting the City's motion on the issue of proximate causation. The order stated that it was "final appealable pursuant to Supreme Court Rule 304(a) and the case continues as to defendant Gregory Jones." Abrams filed a notice of appeal to this court on May 14, 2001.[1] Abrams and Brown voluntarily dismissed their claims against Jones on June 4, 2001.

---

[1]Brown was also listed in the notice of appeal, though the pleadings do not show that she filed suit against the City.

## I

■ First, there is the question of jurisdiction. The City argues that the order at issue does not fall within the scope of Rule 304(a) (134 Ill. 2d R. 304(a)). Plaintiff relies on cases such as *Kucharski v. Floro*, 191 Ill. App. 3d 1032, 548 N.E.2d 483 (1989), to argue that the language quoted above was sufficient. *Kucharski* was disapproved in some respects by the supreme court in *In re Application of Du Page County Collector*, 152 Ill. 2d 545, 605 N.E.2d 567 (1992), but the court therein stated that "where appeal is sought pursuant to Rule 304(a) from a judgment which defeats a claim or is in the nature of a dismissal, the written finding is sufficient only if it refers to appealability." *Application of Du Page County Collector*, 152 Ill. 2d at 551, 605 N.E.2d at 570. The order here refers to appealability, but does not include the language stating that there is no just reason to delay appeal. The City relies on cases such as *Coryell v. Village of La Grange*, 245 Ill. App. 3d 1, 5, 614 N.E.2d 148, 151 (1993), but that case noted that the order merely stated that it was final and appealable *without* reference to Rule 304(a) *or* the "no just reason" language. Here, the order refers to being appealable pursuant to Rule 304(a), which is sufficient to confer jurisdiction on this court.

## II

■ The issue on review is whether the trial court erred in granting summary judgment to the City. Where there are no genuine issues of material fact, summary judgment is a proper method of disposing of a cause. *E.g., Gober v. State Farm Mutual Automobile Insurance Co.*, 263 Ill. App. 3d 846, 847-48, 636 N.E.2d 1016, 1018 (1994). However, summary judgment is a drastic remedy and should be allowed only when the moving party has a clear and certain right to judgment as a matter of law. *Gober*, 263 Ill. App. 3d at 848, 636 N.E.2d at 1018. The trial court may grant summary judgment: (1) when the movant disproves the nonmovant's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (see *Purtill v. Hess*, 111 Ill. 2d 229, 240-41, 489 N.E.2d 867, 871 (1986)); or (2) when the movant can establish the nonmovant lacks sufficient evidence to prove an essential element of the cause of action (see *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 273, 106 S. Ct. 2548, 2552 (1986); *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998); *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331 (1981)). Summary judgment is properly entered when the pleadings, depositions, admissions, and affidavits fail to establish a genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—

1005(c) (West 2000). In ruling upon a summary judgment motion, the evidence is reviewed *de novo* and construed in the light most favorable to the nonmovant. *E.g.*, *Walker v. Rogers*, 272 Ill. App. 3d 86, 89, 650 N.E.2d 272, 274 (1995).

## III

The trial court's order granted summary judgment on the issue of proximate causation and "[b]ased on the determination of this issue, there [was] no reason to consider the other issues in this case." For the reasons that follow, the circuit court erred in both of these conclusions.

■ First, the circuit court erred in ruling on causation while declining to rule on the issue of whether the City owed plaintiffs a duty of care. In order to state a cause of action in negligence, a plaintiff must plead sufficient facts to establish that defendant owed plaintiff a duty of care, a breach of that duty, and an injury proximately caused by that breach. *E.g.*, *Sisk v. Williamson County*, 167 Ill. 2d 343, 346, 657 N.E.2d 903, 905 (1995). If there was no duty, there simply cannot be a breach of duty that is a proximate cause of the plaintiffs' injuries.

Second, had the circuit court ruled that the City breached a duty it owed to the plaintiffs, there would have been a genuine issue of material fact as to causation. The trial court held that the events that ultimately resulted in plaintiff's injury and her child's death were not reasonably foreseeable.

■ In *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257, 720 N.E.2d 1068, 1071 (1999), our supreme court held: "Illinois courts draw a distinction between a condition and a cause."

> "Indeed, if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. [Citations.] The test that should be applied in all proximate cause cases is whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligence. [Citation.]" *Galman*, 188 Ill. 2d at 257, 720 N.E.2d at 1071.

■ The *Galman* court also explained that the term "proximate cause" describes two distinct requirements: cause in fact and legal cause.

> "Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the injury or damage. [Citation.] A defendant's conduct is a cause in fact of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury. [Citation.] A defendant's conduct is a material

element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred. [Citation.] 'Legal cause,' by contrast, is essentially a question of foreseeability. [Citation.] The relevant inquiry here is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct. [Citation.]" *Galman*, 188 Ill. 2d at 258, 720 N.E.2d at 1072.

Applying *Galman* to the facts of this case, Dr. Frank Baker averred that had an ambulance been sent, the transportation by trained professionals probably would not have resulted in the collision that injured plaintiff and caused her child to be stillborn. Consequently, the conduct of the dispatchers could be a cause in fact, as it was a material element and substantial factor in bringing about the injuries.

Under the facts of this case, the dispatchers (the "first wrongdoers") reasonably might have anticipated the efficient intervening cause (Young running the red light and being struck by Jones's car) as a natural and probable result of the dispatcher's own negligence. The plaintiff arguably showed legal cause because the City arguably could have reasonably foreseen the disregard of a traffic signal by someone attempting to transport a woman in labor to a hospital, after the City refused to send an ambulance. The cases cited by the City are distinguishable, as they did not involve drivers transporting women in labor to the hospital. See, *e.g.*, *Quirke v. City of Harvey*, 266 Ill. App. 3d 664, 669-70, 639 N.E.2d 1355, 1359 (1994) (and cases cited therein). Arguably, it was also reasonably foreseeable that such disregard of the traffic signal could result in a collision with another automobile, regardless of whether the other driver was under the influence of drugs or alcohol. Indeed, disregarding a traffic signal often will result in encountering traffic that is obeying the traffic signal.

■ The City urges this court to affirm the judgment of the circuit court on grounds other than causation. It is within the discretion of a reviewing court to affirm the circuit court's decision on any ground warranted, regardless of whether that ground was relied on by the trial court or whether the reasons given by that court were correct. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 347-48, 662 N.E.2d 397, 409 (1996); 155 Ill. 2d R. 366(a)(5). However, a reviewing court is not required to determine questions upon which the trial court expressly refused to rule. *Reidelberger v. Bi-State Development Agency*, 8 Ill. 2d 121, 124, 133 N.E.2d 272, 274 (1956). In this case, the circuit court expressly declined to reach the grounds now urged by the City.

■ Moreover, the City's presentation of its argument that it owed no duty to the plaintiffs is inadequate. The City's brief primarily argues that under the common law "public duty" rule, units of local

government are not liable for failing to provide adequate governmental services such as police and fire protection. *E.g., Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 692 N.E.2d 1177 (1998); *Huey v. Town of Cicero*, 41 Ill. 2d 361, 243 N.E.2d 214 (1968). Yet the City failed to cite, let alone discuss, *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 735 N.E.2d 551 (2000), in which our supreme court allowed a claim of willful and wanton misconduct where 911 dispatchers failed to keep a caller on the phone while the paramedics responded, and the paramedics failed to try the caller's unlocked door to enter the apartment. The dissenting justices concluded that the public duty rule should apply. *American National Bank & Trust Co.*, 192 Ill. 2d at 288-90, 735 N.E.2d at 559-60 (Heiple, Bilandic and Rathje, JJ., dissenting). The majority apparently did not. It seems unlikely that the City was unaware of *American National Bank & Trust Co.*, as it was a named defendant in the case.

During oral argument, the City suggested the case was distinguishable because an ambulance was not dispatched in this case. However, that fact is relevant to the issue of breach, not the issue of duty. "It is basic that a breach of duty can consist of either an act of commission or an act of omission ***." *Hoffman v. Yack*, 57 Ill. App. 3d 744, 747, 373 N.E.2d 486, 489 (1978). Similarly, plaintiffs cited *American National Bank & Trust Co.* in their reply brief, but their discussion of the case was limited to a parenthetical description that referred to an issue of immunity, not the issue of duty.

A reviewing court is not a repository into which an appellant can dump the burden of research. *County of McHenry v. Thoma*, 317 Ill. App. 3d 892, 892, 741 N.E.2d 337, 338 (2000). We conclude that the same principle may apply where an appellee urges this court to affirm on an issue upon which the trial court expressly declined to rule. Accordingly, this court will exercise its discretion to decline to affirm the summary judgment on the other grounds urged by the City, without prejudice to the City raising them fully and properly on remand.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

QUINN and REID, JJ., concur.