(No. 96210.—

PATRICIA ABRAMS, Indiv. and as Special Adm'r of the Estate of Georgia Sabrina White, Deceased, *et al.*, Appellees, v. THE CITY OF CHICAGO *et al.* (The City of Chicago, Appellant).

*Opinion filed May 20, 2004.*

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and David A. Graver, of counsel), for appellant.

Mark E. Stone, of Deer & Stone, P.C., of Chicago (Matthew B. Karchmar, of counsel), for appellees.

Edward F. Dutton, of Wheaton, for *amici curiae* Park District Risk Management Agency *et al.*

Richard J. Rosenblum, of Rubin & Machado, Ltd., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE THOMAS delivered the opinion of the court:

Plaintiff, Patricia Abrams, individually and as special administrator of the estate of Georgia Sabrina White, brought this negligence action against defendant, the City of Chicago, to recover for injuries sustained in an automobile accident. The trial court granted summary judgment for the City, finding that the City's conduct was not a proximate cause of plaintiff's injuries. The appellate court reversed. 338 Ill. App. 3d 179. We allowed the City's petition for leave to appeal (177 Ill. 2d R. 315(a)), and now reverse the judgment of the appellate court.

## BACKGROUND

The relevant facts are not in dispute. In the early morning hours of November 18, 1997, plaintiff called the City's 911 service, requesting an ambulance to take her to the hospital because she had gone into labor with her seventh child. Her labor pains were 10 minutes apart, and she did not have a vehicle of her own to drive to the hospital. The 911 dispatcher, later identified as Vicki Hernandez, told plaintiff that the situation was not an emergency and then hung up the phone.

A few minutes later, plaintiff's sister, Dorothy Brown, placed another 911 call on behalf of plaintiff. The dispatcher for this second call, later identified as Antoi-

nette Cacioppo, explained to Brown that labor pains at 10-minute intervals did not constitute a medical emergency. She then gave Brown the number of a private ambulance service.

Vicki Hernandez, the dispatcher who handled the first call, testified in her deposition that the City's Office of Emergency Communications (OEC) uses a system of flip cards to determine whether to send an ambulance. When pains are less than five minutes apart in a second pregnancy, birth is considered imminent. If a woman called without a way to get to the hospital and her contractions were more than five minutes apart, an ambulance would not be sent. Hernandez acknowledged that the phrase "when in doubt, send" appears on all the cards.

OEC flip card No. 26 lists the dispatch priorities for pregnancy-related matters. Priority I calls for an ambulance to be sent under the following conditions: bleeding in the third trimester; fainting; more than four months pregnant with pains less than five minutes apart; pregnant and hemorrhaging; and delivery or postpartum. Priority III provides that an ambulance will not be sent under the following conditions: pains greater than five minutes apart if private transport is immediately available; or if pregnant but no hemorrhage or pain.

Daniel Bull, a third dispatcher on duty at the time 911 calls were handled, testified that, although it was not covered by the rules, if a woman called for an ambulance with pains 10 minutes apart on a successive pregnancy and private transport was not available, he personally would have sent an ambulance in that situation. He based his opinion on the "when in doubt, send" policy and on the fact that labor pains at 10-minute intervals for a second or later child means that the baby is closer to being born than a first child would be.

After the second 911 call, Brown called a private

ambulance service and was told that they did not have an ambulance available. Plaintiff apparently did not call back the 911 dispatcher and inform her that private transport was not available. Instead, plaintiff telephoned her friend, Henrietta Young, who agreed to leave work to take her to the hospital. Young arrived at plaintiff's residence five minutes later.

As they drove to the hospital, Young generally observed the speed limit and obeyed traffic signals. However, when Young came to the intersection at King Drive and Pershing, she held down her horn and went through a red light. According to Young's deposition, she looked both ways before proceeding, but did not see any traffic coming. In the intersection, Young's car collided with a vehicle driven by Gregory Jones. Jones was speeding at the time, traveling between 75 and 80 miles per hour. In a handwritten statement to police, Jones admitted that he had a beer, two double shots of rum, and crack cocaine, before getting behind the wheel of his car. He also admitted that he was driving on a suspended licence. Plaintiff was seriously injured in the collision. She spent two weeks in a coma, and her baby, Georgia Sabrina White, died after delivery.

Plaintiff sued the City, alleging willful and wanton misconduct in the failure to provide ambulance service. The City filed a motion for summary judgment, contending that it had no duty to provide an ambulance and, in any event, the failure to provide an ambulance was not the proximate cause of plaintiff's injury and her child's death. Plaintiff filed a response to the motion for summary judgment, attaching the affidavit of Dr. Frank Baker. Dr. Baker's affidavit stated that it was his opinion that plaintiff likely would not have been involved in an automobile accident had the City sent an ambulance. The trial court granted the City's motion, finding that its conduct was not the proximate cause of plaintiff's and

her daughter's injuries. The trial court found it unnecessary to reach the duty issue.

The appellate court reversed. 338 Ill. App. 3d at 188. Without citing any authority on point, it found that the trial court "erred in ruling on causation while declining to rule on the issue of whether the City owed plaintiffs a duty of care." 338 Ill. App. 3d at 186. The appellate court then proceeded to resolve the case on the proximate cause issue, without reaching the merits of the duty issue. The appellate court found that "the dispatchers (the 'first wrongdoers') reasonably might have anticipated the efficient intervening cause (Young running the red light and being struck by Jones's car) as a natural and probable result of the dispatcher's own negligence. The plaintiff arguably showed legal cause because the City arguably could have reasonably foreseen the disregard of a traffic signal by someone attempting to transport a woman in labor to a hospital, after the City refused to send an ambulance." 338 Ill. App. 3d at 187. According to the appellate court, the cases cited by the City were "distinguishable, as they did not involve drivers transporting women in labor to the hospital." 338 Ill. App. 3d at 187.

After allowing the City's petition for leave to appeal, we granted the Illinois Municipal League, the Park District Risk Management Agency and the Illinois Association of Governmental Pools leave to submit an *amicus curiae* brief in support of the City. We also granted the Illinois Trial Lawyers Association leave to submit an *amicus curiae* brief in support of plaintiff.

## ANALYSIS

The primary issue raised by the parties on appeal is whether the City's failure to send an ambulance to transport plaintiff to the hospital was the proximate cause of the injuries sustained on the way to the hospital. The parties' arguments also raise questions about

whether the City owed a duty to plaintiff under the circumstances and whether any duty owed was breached. We may, however, assume the existence of a duty and its breach for the sake of discussion in order to address the proximate cause issue. *Thompson v. County of Cook*, 154 Ill. 2d 374, 382 (1993). Because we resolve this case in favor of the City on proximate cause grounds, we need not address the merits of the parties' duty arguments. *Thompson*, 154 Ill. 2d at 384.

To recover damages based upon a defendant's alleged negligence involving willful and wanton misconduct, a plaintiff must allege and prove that the defendant owed a duty to the plaintiff, that the defendant breached this duty, and that the breach was the proximate cause of the plaintiff's injuries. See *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 475 (2001) (Harrison, C.J., specially concurring, joined by Kilbride, J.); *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 256 (1999).

Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *Harrison*, 197 Ill. 2d at 470. If the party moving for summary judgment supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opposing party cannot rest on its pleadings to create a genuine issue of material fact. *Harrison*, 197 Ill. 2d at 470. Proximate cause is generally an issue of material fact in a negligence suit. *Gatlin v. Ruder*, 137 Ill. 2d 284, 293 (1990). Although the issue of proximate cause is ordinarily a question of fact determined by the trier of fact, it is well settled that it may be determined as a matter of law by the court where the facts as alleged show that the

plaintiff would never be entitled to recover. See *Harrison*, 197 Ill. 2d at 476 (Harrison, C.J., specially concurring, joined by Kilbride, J.); *DiBenedetto v. Flora Township*, 153 Ill. 2d 66, 71 (1992) (affirmed dismissal of a negligence complaint on the basis of a lack of facts establishing proximate cause); *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 318 (1942); *Bermudez v. Martinez Trucking*, 343 Ill. App. 3d 25, 30-31 (2003). We conduct *de novo* review of a ruling on a motion for summary judgment. *Harrison*, 197 Ill. 2d at 470-71.

The City argues that the circuit court correctly entered summary judgment on its behalf because plaintiff cannot satisfy the "legal cause" requirement of the proximate cause test. In *First Springfield National Bank & Trust v. Galman*, 188 Ill. 2d 252 (1999), this court harmonized the proximate cause test articulated in *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992), with other long-standing precedent articulating proximate cause concepts (see *Briske v. Village of Burnham*, 379 Ill. 193, 199 (1942); *Merlo*, 381 Ill. at 316; see also *Thompson*, 154 Ill. 2d at 383). In *Galman* and *Lee*, this court found that "the term 'proximate cause' describes two distinct requirements: cause in fact and legal cause." *Galman*, 188 Ill. 2d at 257-58, citing *Lee*, 152 Ill. 2d at 455. A defendant's conduct is a "cause in fact" of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury. *Galman*, 188 Ill. 2d at 258; *Lee*, 152 Ill. 2d at 455. A defendant's conduct is a material element and substantial factor in bringing about the injury if, absent that conduct, the injury would not have occurred. *Galman*, 188 Ill. 2d at 258; *Lee*, 152 Ill. 2d at 455. "Legal cause," by contrast, is largely a question of foreseeability. The relevant inquiry is whether "the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct." (Emphasis in original.) *Galman*, 188 Ill. 2d at 260, citing *Lee*, 152 Ill. 2d at 456.

*Galman* reconciled the above-stated proximate cause precepts of *Lee* with a special subset of proximate cause cases involving injuries caused by the intervening acts of third persons—as was the case in *Briske, Merlo,* and *Thompson. Galman* rejected the notion that *Briske, Merlo,* and *Thompson* are distinct from and wholly incompatible with *Lee. Galman,* 188 Ill. 2d at 258. Instead, it found that those three cases address a situation where the plaintiff's injury results not from the defendant's negligence directly but from the subsequent, independent act of a third person. In that type of case, it has been stated that the test is "whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligence." *Galman,* 188 Ill. 2d at 257, citing *Merlo,* 381 Ill. at 317. If the negligence charged does nothing more than furnish a condition by the which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Galman,* 188 Ill. 2d at 257, citing *Thompson,* 154 Ill. 2d at 383, *Briske,* 379 Ill. at 199, and *Merlo,* 381 Ill. at 316. *Galman* noted that when *Briske, Merlo,* and *Thompson* ask whether the defendant might have reasonably anticipated the intervening efficient cause as a natural and probable result of his own negligence, they are in effect asking, as *Lee* did, whether the intervening efficient cause was of a type that a reasonable person would see as a likely result of his conduct. *Galman,* 188 Ill. 2d at 259.

The City essentially concedes that the refusal to provide ambulance service was a cause in fact of the collision. But it argues that its conduct can in no way be considered the legal cause of plaintiff's injuries. Citing *Galman, Thompson,* and *DiBenedetto,* the City contends

that municipalities should not be exposed to liability for injuries that would not have occurred but for someone else's decision to break the law. It maintains that the reckless driving of Young and Jones were intervening causes that broke the causal connection between its conduct and the injury suffered.

We agree with the City's contention that its conduct was not the legal cause of plaintiff's tragic and unfortunate injuries. The cases cited by the City provide strong support for its position. *Galman* reversed the denial of defendants' motion for judgment notwithstanding the verdict on the basis of a lack of probable cause. *Galman*, 188 Ill. 2d at 262. There, one of the defendants had parked a tanker truck in a no parking zone, 41 feet from an intersection with a crosswalk. The plaintiff's decedent, a pedestrian, walked the 41 feet from the intersection and attempted to cross the designated trucking street at mid-block near the tanker. The pedestrian was struck by a car in the street and killed. *Galman* found that the defendant's conduct in parking the truck was a "cause in fact" of the decedent's fatal injuries, but then held that it clearly was not the "legal cause" of those injuries:

"We have no quarrel with [the plaintiff's] assertion that 'it was readily foreseeable that at school closing time school children might be crossing the street, and [a driver] might need both lanes of traffic to avoid an accident.' That, however, is not the question. The question is whether it was reasonably foreseeable that violating a 'no parking' sign at mid-block would likely result in a pedestrian's ignoring a marked crosswalk at the corner, walking to mid-block, and attempting to cross a designated truck route blindly and in clear violation of the law. Clearly, it would not. [Decedent's] decision to jaywalk, while undeniably tragic and regrettable, was entirely of her own making. [Defendants] neither caused [decedent] to make that decision, nor reasonably could have anticipated that decision as a likely consequence of their conduct. One simply does not follow from the other." *Galman*, 188 Ill. 2d at 260-61.

Similarly, in *Thompson v. County of Cook*, 154 Ill. 2d 374 (1993), this court also concluded that proximate cause was lacking as a matter of law. There, the driver of an automobile was speeding, drunk and eluding police when he left the road at a curve. *Thompson* held that Cook County's failure to maintain a sign warning of the curve was not a proximate cause of the plaintiff passenger's injuries. Rather, the driver's traffic violations were the sole proximate cause of the accident. *Thompson*, 154 Ill. 2d at 383. The court noted that "[p]roximate cause is also absent where the independent acts of a third person break the causal connection between the alleged original wrong and the injury. When that occurs, the independent act itself becomes a proximate or immediate cause." *Thompson*, 154 Ill. 2d at 383.

*DiBenedetto v. Flora Township*, 153 Ill. 2d 66 (1992), is also instructive. There, the decedent's vehicle crossed the oncoming lane of traffic, left the roadway and landed in a drainage ditch erected by the defendant township. The plaintiff argued that the township located the ditch so as to pose a danger to traffic and it was foreseeable that a motorist could deviate from the roadway and wind up in the ditch. The appellate court found that the proximate cause of the accident was a jury question. This court, however, reversed the appellate court's determination and affirmed the circuit court's dismissal of the plaintiff's complaint. *DiBenedetto*, 153 Ill. 2d at 72. We succinctly concluded that "[t]he proximate cause of the accident in this case was not the ditch. The proximate cause of the accident was the loss of control of the vehicle and its being driven off the traveled way." *DiBenedetto*, 153 Ill. 2d at 71.

Applying *Galman*, *Thompson* and *DiBenedetto* to the present case, we conclude as a matter of law that the City could *not* have reasonably anticipated that a refusal to send an ambulance when labor pains are 10 minutes

apart would likely result in plaintiff's driver running a red light at the same time that a substance-impaired driver was speeding through the intersection on a suspended license. Millions of women in labor make it safely to the hospital each year by private transportation. Thus, plaintiff was in no peril greater than that faced by women each day who make it safely to the hospital without the aid of an ambulance. The legal causes of the injury here were the two drivers in willful violation of the traffic laws, and not anything the City did or did not do. While all traffic accidents are to some extent remotely foreseeable (*DiBenedetto*, 153 Ill. 2d at 72), this is not the kind of harm that was sufficiently foreseeable from the refusal to send an ambulance so as to satisfy the "legal cause" portion of a proximate cause analysis. In other words, the injury was not of a type a reasonable person would see as the *likely or probable result* of the refusal to send an ambulance. See *Galman*, 188 Ill. 2d at 260-61; see also *Quirke v. City of Harvey*, 266 Ill. App. 3d 664, 670 (1994) (the defendant city could not have reasonably foreseen that one or both drivers would violate their statutory duty to treat an inoperable traffic light as a stop sign before proceeding into the intersection), citing *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 50 (1991) (defendant landowner could not have reasonably foreseen that a truck driver who collided with a bicyclist would exit defendant's driveway without first ascertaining whether any traffic was approaching). Instead, the City's conduct simply furnished a condition, making possible the injury caused by the independent, illegal acts of others. Plaintiff was endangered by the acts of Young and Jones, not by the City.

*Biel v. City of Bridgeview*, 335 Ill. App. 3d 526 (2002), and *LoCoco v. XL Disposal Corp.*, 307 Ill. App. 3d 684 (1999), the two cases cited by plaintiff in support of her position, are easily distinguishable. In *Biel*, the appellate

court found that it was foreseeable that the defendant's failure to repair a broken streetlight might result in an injury to a pedestrian crossing at the relevant location, despite the pedestrian's own illegal conduct. *Biel*, 335 Ill. App. 3d at 536. The court noted the close similarity to *Galman*, but ultimately struggled to distinguish it. It concluded that the facts before it differed from *Galman* because in *Biel* other pedestrians routinely crossed at the same location and the area was dark. *Biel*, 335 Ill. App. 3d at 536. Aside from *Biel*'s questionable attempt to distinguish *Galman*, we note that the facts of *Biel* differ significantly from the case at bar. Here, the City did not do or fail to do anything that made it more difficult to avoid an accident at the scene.

In *LoCoco*, the township made an incomplete improvement where it painted stop bar lines on the roadway, but did not install corresponding stop signs. This created a confusing situation that reasonably could have led the plaintiff's decedent to think that she was at a four-way stop when in fact cross traffic was not required to stop. The appellate court found that placing stop bar lines for the cross traffic when it was not required to stop without corresponding traffic signs was "the type of conduct by which a reasonable person may foresee an accident as a likely result." *LoCoco*, 307 Ill. App. 3d at 696.

In contrast to both *Biel* and *LoCoco*, the City in this case did nothing to make the intersection where the accident occurred dangerous or confusing.[1]

---

[1]These cases are also distinguishable from the general rule applied at an intersection with merely inoperative traffic signals, where the law requires that the lights be treated as a stop sign (625 ILCS 5/11—305(e) (West 2002)), and the defendant's conduct does nothing to change the driver's perception of the intersection. See, *e.g.*, *Quirke*, 266 Ill. App. 3d at 668 (the defendant city's conduct was not the proximate cause of the collision where the

## CONCLUSION

For the foregoing reasons, we conclude that the City's refusal to send an ambulance was not a proximate cause of the accident or of the plaintiff's injuries. Accordingly, we reverse the judgment of the appellate court, and we reinstate the judgment of the circuit court, which granted the City's motion for summary judgment. Because our resolution of the proximate cause issue disposes of the entire claim against the City, it is unnecessary to address the remaining issues.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

driver failed to treat the inoperative traffic light as a stop sign); *Quintana v. City of Chicago*, 230 Ill. App. 3d 1032, 1035 (1992) (same); see also *Wood v. Village of Grayslake*, 229 Ill. App. 3d 343, 356 (1992) (the defendant municipalities had a right to assume that a driver would not violate statutory duty to stop at a stop sign and that she would check for oncoming traffic before proceeding into the intersection).