In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2278

JOSEPH W. BUECHEL,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 08-cv-132-JPG — **J. Phil Gilbert**, *Judge.*

ARGUED NOVEMBER 13, 2013 — DECIDED MARCH 7, 2014

Before MANION, KANNE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In July 2006, plaintiff Joseph Buechel was incarcerated at FCI-Greenville, a federal correctional institution in Greenville, Illinois. Buechel contracted Methicillin-Resistant *Staphylococcus aureus*, known as MRSA, which is a type of staph infection resistant to certain antibiotics. Buechel's MRSA infection was so severe that it nearly killed him. He survived, but he had to be hospitalized for more than forty days and was left with serious and permanent damage to

his heart and lungs. He brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), alleging that his MRSA infection and resulting injuries were caused by FCI-Greenville's negligence.

Though Buechel's administrative claim and complaint described his allegations of negligence in broader terms, the district court issued a pretrial order that limited Buechel's negligence claim to a theory that he contracted MRSA from contact with one fellow inmate, Joseph Hansen, in the prison laundry in mid-July 2006, or more generally as a result of sloppy procedures in handling infected laundry in the prison. Viewing Buechel's claim and the admissible evidence through this narrow lens, the court found after a bench trial that Buechel had not proved by a preponderance of the evidence that he had contracted MRSA from either Hansen or the laundry procedures. Accordingly, the district court entered judgment in favor of the government.

Buechel appeals. We find no error in the district court's finding that Buechel failed to prove that he contracted MRSA from Hansen and/or as a result of inadequate laundry procedures. However, the district court erred when it limited Buechel's negligence claim, without his consent, to just those two theories. Buechel's administrative claim and complaint presented a broader theory that FCI-Greenville was negligent more generally in its failure to adhere to its MRSA-containment policies in 2006, causing his MRSA infection. We affirm in part but vacate the judgment in favor of the government and remand for further proceedings on that broader theory.

I.  *Negligence Claims Presented at Trial*

The district court found that Buechel failed to prove his MRSA infection was caused by negligence in either permitting Hansen to work with him in the prison laundry in mid-July 2006 or failing to use proper laundry procedures to prevent the spread of MRSA. We review these findings of fact only for clear error. Fed. R. Civ. P. 52(a)(6); *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 447 (7th Cir. 2006) (The district court's findings of fact "are entitled to great deference and shall not be set aside unless they are clearly erroneous."). Under this standard, we will not reverse unless, after reviewing all the evidence, we are left with "'the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). As long as the district court's conclusions are "plausible in light of the record viewed in its entirety," we will not disturb them. *Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1028 (7th Cir. 2002), quoting *Anderson*, 470 U.S. at 573–74. On the merits of Buechel's negligence theories that were within the scope of the court's pretrial order and were presented at trial, we affirm the district court.

When Buechel first arrived in FCI-Greenville in June 2006, he was healthy and had no symptoms of a MRSA or non-MRSA staph infection. In mid-July 2006, Buechel and Hansen worked together in the prison laundry to fix a washing machine and dryer as part of their prison maintenance jobs. Then, on July 20, 2006, Buechel was diagnosed with MRSA. Buechel testified that during their work assignment, Hansen had an open wound on his face that was oozing infected pus.

Buechel's expert, Dr. Robert Greifinger, testified that "the most likely source" of Buechel's MRSA infection "was discharge from [the] persistent infection of Mr. Hansen" as they passed tools back and forth while working together in the prison laundry. Dr. Greifinger believed that the fact that Buechel and Hansen had hand-to-hand contact while Hansen had a draining wound and the timing of their respective diagnoses of infection were consistent with the conclusion that Buechel had become infected with MRSA as a result of working with Hansen. The district court rejected this theory. It found that Buechel was not credible, that Dr. Greifinger was not persuasive, and that the evidence did not show either that Hansen had MRSA in mid-July 2006 or that he had a seeping wound on his face during the work assignment with Buechel.

Hansen had tested positive for a non-MRSA staph infection in March 2006, again in May 2006, and again nearly a year later, in April 2007. In each of these laboratory tests, the staph bacteria infecting Hansen were found to be resistant to a different set of antibiotics. None of the lab tests showed Hansen to be MRSA-positive. Hansen's infections also had profiles of antibiotic resistance different from the profile of Buechel's MRSA infection. For example, Hansen's May 2006 infection was resistant to Bactrim, while Buechel's infection was susceptible to Bactrim. Dr. Greifinger conceded in his written report that there was no laboratory evidence that Buechel's infecting organism was the same as Hansen's infecting organism. He testified at trial that it was theoretically possible for Hansen's staph infection to have metamorphosed into MRSA between May and July 2006, and then to have metamorphosed back into non-MRSA staph by April 2007, but

the district court understandably found this theoretical possibility to be speculative. The district court's findings that Hansen did not have MRSA in mid-July 2006 and that Buechel was not infected with the same organism as Hansen find reasonable support in the record and are not clearly erroneous.

The district court also rejected Buechel's assertion that Hansen had a seeping wound on his face when they worked together in the prison laundry that would have enabled transmission of an infection between them. The court explained why it did not find Buechel's testimony about Hansen's wound credible. "[I]n light of his demeanor while testifying, his interest in giving testimony favorable to himself, and his testimony's inconsistency with Hansen's medical records documenting no draining wounds and Hansen's daily supervisor's testimony that he never saw any drainage from Hansen's face, Buechel's testimony on this matter was incredible." Hansen's medical records reflect that on June 21 and 22, 2006, he had a wound on his forehead above his right eyebrow with "very scanty exudate," and prison staff restricted him from working during that time. Hansen and Buechel did not work together until a month later, in mid-July. The only contemporaneous medical record, dated July 18, 2006, states that Hansen had multiple lesions on his back, arm, and legs, but none on his face and none that were draining. In other words, Hansen's medical records do not support Buechel's testimony that Hansen had a draining wound on his face in mid-July 2006. Here, too, we have no grounds to disturb the district court's finding of fact based on conflicting evidence.

We also find no clear error in the district court's conclusion that the evidence did not prove that Buechel contracted MRSA

from FCI-Greenville's laundry procedures. In 2006, the Bureau of Prisons and FCI-Greenville had MRSA Guidelines in place stating that MRSA-infected inmates whose wound drainage could not be contained with dressing should have their laundry "treat[ed] … as potentially infectious" and "bagged" and washed at least every other day. Biohazard laundry was supposed to be washed separately from other inmate laundry. Buechel presented evidence that FCI-Greenville Health Services did not give biohazard laundry bags to inmates infected with either MRSA or non-MRSA staph. Additionally, Buechel testified that Health Services did not instruct infected inmates to wash their clothes separately and did not instruct MRSA-infected inmates on how to wash their clothes if they had draining wounds.

The district court, however, was not persuaded that Buechel contracted MRSA as a result of FCI-Greenville's laundry procedures. The court found that Buechel did not offer evidence that the prison's laundry temperature or laundry disinfecting procedures were inadequate to prevent the transmission of MRSA. Dkt. 161 at 7; see also Tr. 211 (Dr. Greifinger did not know if housing unit laundry machines heated water to a high enough temperature to kill MRSA bacteria, or if clothes were laundered with or without bleach). Without such evidence, the court found, there was nothing to tether FCI-Greenville's failure to provide biohazard bags and instructions on proper laundry procedures to Buechel's infection. The district court did not clearly err in rejecting this theory that Buechel contracted MRSA as a result of inadequate laundry procedures. Accordingly, we affirm on the merits of the negligence theories that were presented and heard at trial.

II. *Scope of Buechel's Negligence Claim*

As noted, however, the theories that Buechel presented at trial were limited over his objection. The district court ruled in a September 13, 2012 pretrial order that Buechel's negligence claim would be "limited to the conditions leading to the possible transmission of a staphylococcus infection in the laundry facility but not necessarily limited to contamination from Joseph [Hansen]." This ruling was based on the district court's interpretation of the scope of Buechel's *pro se* administrative tort claim and *pro se* complaint. Buechel argues on appeal that the district court erred by unduly limiting his claims. He contends that his *pro se* documents also asserted a broader theory that FCI-Greenville was negligent by failing to follow its own 2006 MRSA-containment policies, resulting in his infection. We conclude that the district court's reading of Buechel's claim was too restrictive and ran contrary to the imperative that courts construe *pro se* claims generously. In a new trial after remand, Buechel should be permitted to present evidence on his broader theory that the prison's failure to follow its own policies in 2006 amounted to negligence that caused his MRSA infection and resulting injuries.

A. *The Federal Tort Claims Act and Its Exhaustion Requirement*

The Federal Tort Claims Act permits a person to bring suit in federal court against the United States:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment,

under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Pursuant to this provision, federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials. *United States v. Muniz*, 374 U.S. 150, 150 (1963). Like any other federal tort claimant, however, an inmate may not bring such a suit unless he has first presented his claim to the appropriate federal agency and that agency has denied the claim. See 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a) (requiring claimant to execute a "Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for … personal injury … alleged to have occurred by reason of the incident … ."). Once the agency denies or fails to take action on an inmate's claim, he has six months to file a suit. 28 U.S.C. § 2401(b).

B.  *Administrative and District Court Proceedings*

To comply with the administrative claim requirement, Buechel completed a complaint form and submitted it to FCI-Greenville for review on October 12, 2006. In support of his claim, and without outside legal assistance, he wrote:

> Lack of Medical Treatment / Refuse to treat a highly contagious disease ie: Staff infection with this lack of treatment has indangered the lifes of myself and other inmates *and also the inmate that I caught this highly contagious disease to continue to interact in general population*.

Dkt. 139, Ex. 1 (emphasis added). When his claim was not resolved to his satisfaction, he filled out a Form 95, describing his claim as follows:

> Caught Staph Infestion from an INMATE JOE HANSON who works in [maintenance services], wherein *the institution failed to quarantine Hanson to prevent transmittal of disease*.

Dkt. 139, Ex. 4 (emphasis added).

Buechel next filed suit, setting forth his claim yet again, and still without the assistance of counsel. His claim narrative continues for more than two pages but begins:

> Defendant's medical and Executive Departmental employees are intentionally disregarding basic manditory [sic] medical biohazard containment quarantine and decontamination procedures of infectious diseases … when Mr. "Joe Hanson" [*sic*] an inmate at federal correctional institution in Greenville, Illinois, was *allowed to return to his job assignment in ("CMS") after being diagnosed with the "staph infection virus"* that ended up being transmitted to plaintiff during a machanical [*sic*] operation on a laundry unit which ["Hanson"] [*sic*] and the plaintiff were passing tools between each other … .

Dkt. 1 at 4 (emphasis added). It bears repeating that Buechel was acting without the assistance of a lawyer both at the administrative complaint stage and when he drafted and filed his complaint in court.

Buechel's complaint passed screening under 28 U.S.C. § 1915A and the district court appointed counsel to represent him.[1] After surviving two motions to dismiss, Buechel's negligence claim proceeded to discovery and the government then moved for summary judgment.[2] In its motion the government argued that Buechel had failed to exhaust his administrative remedies and that his negligence claim should be treated as a medical malpractice claim (and thus subject to the district court's prior dismissal of that claim). The district court rejected both of these arguments, though it put off a definitive ruling on the government's failure-to-exhaust argument until trial. Regarding the scope of Buechel's administrative complaint, however, the court wrote:

> Despite the fact that this paragraph was not included in the section of the administrative complaint form designated for describing the "basis of claim," this paragraph was sufficient to alert a legally sophisticated reader that Buechel was complaining about the inadequacy of measures to prevent Hansen from transmitting staph to him. *A legally sophisticated reader would have known that such a claim encompassed the practice of allowing sick inmates like*

---

[1] The district court appointed J. Kevin McCall of Jenner & Block, LLP, to represent Buechel. Mr. McCall and the firm continued to represent Buechel on appeal, and we are grateful to them and to Nicole A. Allen, Brij B. Patnaik, and Chelsea L. Warren for their able assistance.

[2] The district court construed Buechel's filings as including a medical malpractice claim. This claim ultimately was dismissed with prejudice, and Buechel does not appeal that ruling.

> *Hansen to come into contact with Buechel—which is explicit in the administrative claim form in the allegation of "failed to quara[n]tine"—as well as the failure to ensure those sick inmates do not transmit their diseases to those with whom they come in contact—which is implicit in the allegation of failure to "prevent tran[s]mittal." Because Buechel's administrative claim form sets forth enough facts to alert a legally sophisticated reader to the presence of both aspects of his claim, it satisfies the presentment requirement.* Thus, the United States is not entitled to summary judgment on the grounds that Buechel failed to exhaust his administrative remedies. *The Court notes, however, that Buechel's remaining claim in this case is limited to negligence that allowed Hansen to transmit pathogens to him and does not include a general claim about prison hygiene practices unconnected to Hansen.*

*Buechel v. United States*, 2012 WL 948368, at *5 (S.D. Ill. March 20, 2012) (emphasis added). We agree with the first portion of this passage, which recognized that Buechel had alleged a failure to ensure that MRSA-infected inmates did not spread their infections. But the last sentence seems to conflict with that appropriately generous reading of the *pro se* documents. While acknowledging that Buechel had claimed that the prison had "failed to quara[n]tine" inmates "like Hansen" in the operative documents, the court then, and without reference to those documents, also restricted that claim to contact with Hansen.

Given this internal contradiction in the order, the issue arose again at the pretrial conference. Aided by counsel,

Buechel argued that his administrative complaint forms and *pro se* complaint presented a claim that his MRSA infection was caused by FCI-Greenville's negligent and more general failure to segregate MRSA-positive inmates, including but not limited to Hansen, from the general inmate population. The government's position was that Buechel's claim should be construed as limited to infection only by Hansen. The court's ruling was terse:

> In light of the language in plaintiff's complaint and the scope of his administrative tort claim, the Court finds that the issues in this case are limited to the conditions leading to the possible transmission of a staphylococcus infection in the laundry facility but not necessarily limited to contamination from Joseph Hansen.

Buechel argues this ruling was an error.

C. *Analysis*

At each stage of the federal tort claim process, *pro se* administrative complaint forms are "entitled to a generous construction." *Palay v. United States*, 349 F.3d 418, 425–26 (7th Cir. 2003) ("[I]f the claim would have been apparent to a 'legally sophisticated' reader of the form, then [the Court] will charge the agency with notice of that claim and deem it to have been exhausted."), quoting *Murrey v. United States*, 73 F.3d 1448, 1452–53 (7th Cir. 1996) ("Clearly, the entire [Standard Form 95] was intended to be read, and if it was read the [plaintiff's] claim would leap out at the legally sophisticated reader."). Though an inmate is required to plead sufficient facts to put the agency on notice of the claim so that it may

investigate, an inmate is not required to plead legal theories. *Palay*, 349 F.3d at 425–26. Any claim "implicit in the facts" should be deemed to have been presented to the agency. *Id*. at 426, quoting *Murrey*, 73 F.3d at 1452; see also *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (*pro se* complaint entitled to generous construction). We review *de novo* the district court's reading of Buechel's administrative claim, giving Buechel the benefit of every reasonable inference that may be drawn from his allegations. *Palay*, 349 F.3d at 425 (using Rule 12(b)(6) standard to decide whether *pro se* complainant had exhausted administrative remedies).

Here, though Buechel was clearly complaining about his medical treatment—*i.e.* "Lack of Medical Treatment / Refuse to treat a highly contagious disease"—he was also complaining of the prison's failure to quarantine infected inmates properly, including Hansen but not necessarily limited to him. ("[A]lso the inmate that I caught this highly contagious disease to continue to interact in general population;" "the institution failed to quarantine [Hansen] to prevent transmittal of disease;" "medical and executive departmental employees are intentionally disregarding basic mandatory medical biohazard containment quarantine and decontamination procedures of infectious diseases;" "[Hansen] was allowed to return to his job assignment … after being diagnosed with [a staph infection].")

Buechel's claim set forth his observations and his lay beliefs concerning how he contracted MRSA. As a *pro se* claimant without legal or medical training, he was not required to do more than that. It was up to the prison administration to fill in the gaps, to the extent possible. Buechel provided enough information from which a legally sophisticated reader could

recognize that when he claimed he had contracted MRSA after coming into contact with Hansen and that the prison was disregarding biohazard and quarantine procedures, he was making a more general claim that FCI-Greenville was not adhering to sound MRSA-containment policies.

As noted above, the district court's summary judgment ruling had seemed to recognize this. *Buechel*, 2012 WL 948368, at *5 (noting that Buechel had explicitly alleged the government "failed to quara[n]tine" and "prevent tran[s]mittal," based also on allegation that a sick inmate "like Hansen" had come into contact with Buechel). But the summary judgment ruling and the September 13, 2012 pretrial order then imposed a hurdle for Buechel's negligence claim that would be unreasonably difficult for any complainant to meet at the stage of the administrative claim or complaint, never mind that Buechel had been acting without outside legal or medical advice. By limiting Buechel's *pro se* claim to contact with Hansen, *Buechel*, 2012 WL 948368, at *5, and/or the prison laundry, Dkt. 141, the court effectively required Buechel to pinpoint when and how he had contracted MRSA in order to state a viable negligence claim. This imposed too heavy a burden for any claimant and plaintiff, but especially for a prisoner acting *pro se*.

To see why, set aside the challenges posed for prison inmates for a moment, and consider a different person trying to figure out how he contracted MRSA, perhaps after a routine visit to a doctor's office.[3] The patient was called back into the

---

[3] Although it has evolved to include persons exposed to other communities, including inmate populations, MRSA is most often associated with

(continued...)

exam room, put on a gown, and sat on an exam table. A nurse entered and took vital signs. Then the doctor entered and performed a routine physical examination. Perhaps some blood was drawn for lab work. Even in that simple scenario, how could a lay person possibly figure out how he contracted MRSA? Did the doctor or nurse not wash her hands? Was the exam table not decontaminated between patients? What about the thermometer? Perhaps the syringe was unclean? MRSA is exceptionally contagious and is easily transmitted by casual contact. It would be difficult for any person, no matter his education or background, to figure out exactly how he contracted it. How was Buechel supposed to do it? Instead, he did what he could, and put forth the facts that he had, including his suspicions about Hansen. But the "legally sophisticated reader" we attribute to the government agency is expected to look more closely and to see that he was also complaining more generally about the prison's failure to follow appropriate MRSA-containment guidelines, including taking reasonable measures to keep healthy prisoners separated from the contagion.

The government argues that the district court's pretrial ruling limiting Buechel's negligence claim did not limit Buechel's claims but expanded them. It also argues that Buechel could have amended his complaint after counsel was

---

[3] (...continued)

health care environments. See Federal Bureau of Prisons Clinical Practice Guidelines, *Management of Methicillin-Resistant Staphylococcus aureus (MRSA) Infections*, 1 (April 2012), http://www.bop.gov/resources/pdfs/mrsa.pdf (last visited March 6, 2014).

appointed, but he failed to so. We reject both of these quasi-waiver arguments. First, the court's ruling was not an expansion of Buechel's claims, and it was not a "grant" of Buechel's request. Buechel asked the district court to recognize that the negligence claim presented in his *pro se* administrative claim and complaint encompassed the theory "that the United States was negligent because FCI-Greenville employees failed to adequately segregate MRSA-positive inmates, *including but not limited to inmate James Joseph Hansen*, from the general inmate population, and that this caused Plaintiff's MRSA infection and seriously injured him." Buechel did not "request" that his claims be *limited* to contact and conditions within and relating to the prison laundry. The government's insistence that Buechel "prevailed" is groundless.

The government's contention that Buechel had the opportunity to amend his complaint but failed to do so, even after counsel was appointed, also is not a ground to hold him to the court's pretrial ruling. As discovery proceeded, but before the summary judgment and pretrial rulings were issued, Buechel questioned whether amending the complaint was necessary to clarify that his claim was not limited to the Hansen theory. Dkt. 70 at 5 (responding to government's argument that discovery relating to other inmates besides Hansen was irrelevant) ("To the extent this Court believes it is necessary for Plaintiff to amend his complaint on the sole issue of other inmates who may have caused Plaintiff's MRSA infection, Plaintiff requests the Court grant him leave to do so."); Dkt. 74 at 4 ("Causation is an element of negligence that Buechel must prove, and there is ample authority that supports either allowing Buechel to amend his complaint on the sole issue of

causation, or to read the complaint so that it is not limited to Hansen.").

Each of these motions was before the magistrate judge, who did not explicitly respond to Buechel's assertion that he should be allowed to replead if necessary to expand his claim beyond Hansen. Implicitly, however, the magistrate judge's ruling seemed to confirm that Buechel's *pro se* documents were sufficient for a broader negligence claim to go forward. See Dkt. 75 at 1–2 ("[C]ounsel was appointed to ensure that this action was properly litigated because plaintiff was found incapable of adequately representing himself; therefore, plaintiff's appointed counsel will not now be strictly constrained by the original pleadings."); Dkt. 76 at 2 ("[C]ounsel was appointed to ensure that this action was properly litigated because plaintiff was found incapable of adequately representing himself; therefore, plaintiff's appointed counsel will not now be strictly constrained by the original pleadings. With that said, the fact that information may be discoverable does not necessarily mean that it will ultimately be admissible, or that the scope of the complaint is being broadened.").

Buechel raised the issue again in the brief he submitted to the district court judge on the scope of the claim. Dkt. 139 at 8–9 (The "evidence warrants either a finding that Plaintiff's complaint has been constructively amended to include the possibility that inmates other than Hansen caused his MRSA infection, or warrants allowing Plaintiff to formally amend the complaint prior to trial."). Buechel raised the issue but did not receive a clear answer from the court until just before trial, when it was too late to cure the problem. A district court is not obliged to give legal advice to a party, with counsel or *pro se*,

but this was an issue that needed to be resolved when there was time to fix it.

More to the point, however, Buechel correctly believed that he had properly pled a negligence claim that encompassed the prison's failure to adhere to BOP and internal policies regarding MRSA, including its failure to quarantine infected inmates, and that amendment was unnecessary. Buechel did not need to replead a claim that was properly pled. Accordingly, we reject the government's contention that he should, on appeal, be bound to the district court's ruling.

In sum, a prison administrator or other legally sophisticated reader interpreting Buechel's claim should not have understood it as limited to contact with Hansen but should have recognized the more general assertion that inmates with MRSA were not being segregated from uninfected inmates, contrary to the prison's policies. Buechel was alleging that the prison was negligent in failing to quarantine infected inmates, including but not limited to Hansen, and certainly not limited to the confines of the prison laundry or laundry procedures. The district court's ruling otherwise was an undue restriction on Buechel's claim and on the evidence it considered at trial. Accordingly, we must vacate the judgment in favor of the United States.

III.   *Merits of the Expanded Negligence Claim*

Because the district court construed Buechel's claim too narrowly, the court did not consider evidence related to Buechel's theory that in 2006, FCI-Greenville had policies in place to control infections such as MRSA, that it failed to follow those policies, and that its failures proximately caused

him to contract MRSA. Buechel argues that this evidence, properly considered, proves causation and that the district court's judgment should be reversed.

Ordinarily we review factual findings claims for clear error. See Fed. R. Civ. P. 52(a)(6). Here, however, neither side has had a full opportunity to present its evidence on this theory and the district court has not had the opportunity to address it. We therefore remand to the district court to consider this evidence in the first instance. See *FMS, Inc. v. Volvo Constr. Equipment N.A.*, 557 F.3d 758, 763 (7th Cir. 2009) ("When the parties brief an issue that has not been addressed by the district court, it is not unusual for this court to remand so that the district court may consider the issue in the first instance.").

Illinois law governs Buechel's broader claim. See 28 U.S.C. § 1346(b)(1) (predicating FTCA liability "in accordance with the law of the place where the act or omission occurred"). To establish a claim for negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Under Illinois law, that means Buechel must show that FCI-Greenville breached a duty to him and that its breach was both a "cause in fact" and a "legal cause" of his MRSA infection. *Simmons v. Garces*, 763 N.E.2d 720, 732 (Ill. 2002). "A defendant's conduct is a 'cause in fact' of the plaintiff's injuries only if that conduct is a material element and a substantial factor in bringing about the injury." *Abrams v. City of Chicago*, 811 N.E.2d 670, 675 (Ill. 2004). A defendant's conduct is a material element and a substantial factor in bringing about injury if, absent that conduct, the

injury would not have occurred. *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1072 (Ill. 1999). On the other hand, legal cause is largely a question of foreseeability. *Abrams*, 811 N.E.2d at 675. The relevant inquiry is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct. *Galman*, 720 N.E.2d at 1072, citing *Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 503 (Ill. 1992).

Buechel contends that FCI-Greenville had three primary infection control policies in place in 2006: (1) the Bureau of Prisons MRSA Guidelines; (2) a memorandum issued by FCI-Greenville Warden Sara Revell on May 1, 2006; and (3) the BOP program statement on Infectious Disease Management. Pl. Exs. 9, 10, 11. Among other things, these policies required that infected inmates whose wound drainage could not be controlled with dressings be housed in single cells, that inmates with MRSA and non-MRSA staph infections be placed in special housing if drainage from their wounds could not be controlled with dressings, and that inmates with MRSA and non-MRSA staph infections be evaluated by medical staff to determine whether it was appropriate for them to work in the prison. Buechel argues that he has proved that FCI-Greenville breached its policies that required MRSA-positive inmates with uncontrolled draining wounds to be segregated from the general inmate population, and thus has proved that Buechel's MRSA infection was caused by this failure.

Buechel is incorrect. First, the district court never found that FCI-Greenville breached the policies at issue. Even if the district court finds on remand that Buechel has satisfied that burden, for FCI-Greenville to be liable, he must also prove that FCI-Greenville's breach of these policies *caused* his infection. In

other words, if FCI-Greenville failed to adhere to its MRSA-containment policies in 2006, then Buechel must show by a preponderance of the evidence that its failure was a material element and a substantial factor in his infection and that his infection was a foreseeable result.

Buechel's reliance on *Duvall v. Dallas County*, 631 F.3d 203, 208–09 (5th Cir. 2011) and *DeGidio v. Pung*, 920 F.2d 525, 529–31 (8th Cir. 1990), is not persuasive at this stage of the case for the simple reason that in each case, the court of appeals was evaluating the sufficiency of the evidence supporting a verdict for the plaintiff. Here, we have no findings of fact on Buechel's expanded negligence claim, much less findings in his favor. In *Duvall*, the Fifth Circuit found that the evidence was sufficient to uphold a jury's verdict in favor of an inmate who had contracted an infection in a county jail. The jury in that case heard evidence that the MRSA infection rate in the jail was close to twenty percent, while other jails had infection rates of one or two percent. The jury also heard evidence that it was possible to contain MRSA but that jail officials were not willing to take the necessary steps to control the outbreak. *Duvall*, 631 F.3d at 208. But even the evidence in *Duvall* did not result in a directed verdict for the plaintiff—which is essentially the result Buechel requests on appeal without the theory having even been tried. Instead, the evidence in *Duvall* went to the jury, and the jury found causation. We remand for just such an evaluation of the evidence in Buechel's case.

Likewise, in *DeGidio*, the district court held a bench trial on whether the procedures for tuberculosis prevention and control at the prison where the plaintiff was incarcerated violated the Eighth Amendment. 920 F.2d at 527–31 (reciting

district court's findings regarding defendants' failures to respond quickly and effectively to tuberculosis outbreak, exacerbating outbreak). Based on a series of factual findings, the appellate court upheld the district court's verdict that the defendants' reckless behavior amounted to deliberate indifference to the serious needs of inmates. *Id*. at 533. Again, here we have no such factual findings or legal conclusions in Buechel's favor on his broader claim. Buechel must prove to the district court in the first instance that FCI-Greenville breached the MRSA-containment policies that were in effect in the prison in 2006, and that any such breaches caused his MRSA infection.

The government protests that Buechel's theory that FCI-Greenville was negligent in failing to follow its own policies, possibly causing Buechel's MRSA infection, amounts to a never-before-argued theory of *res ipsa loquitur*. We disagree. For the doctrine of *res ipsa loquitur* to apply, a plaintiff must prove that he or she was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control. See *Heastie v. Roberts*, 877 N.E.2d 1064, 1076 (Ill. 2007), citing *Gatlin v. Ruder*, 560 N.E.2d 586, 590 (Ill. 1990); *Metz v. Central Illinois Electric & Gas Co.*, 207 N.E.2d 305, 307 (Ill. 1965). Buechel does not rely on *res ipsa loquitur* to fill a causation gap in his negligence claim, however. He intends to offer evidence at trial concerning the prison's policies, its deviations from those policies, and whether those deviations caused his MRSA infection. In all likelihood that evidence will be largely circumstantial, but circumstantial evidence of causation is still evidence.

The doctrine of *res ipsa loquitur* could not have applied to Buechel's claim in any case. Perhaps someday medicine will eradicate staph infections like MRSA, but in the present day, MRSA is prevalent enough that infections can and do occur in spite of adherence to best practices and by inadvertent means that cannot be attributed to institutional or individual negligence. See Centers for Disease Control and Prevention, Methicillin-resistant Staphylococcus aureus (MRSA) Infections, General Information about MRSA in the Community, http://www.cdc.gov/mrsa/community/index.html (last visited March 6, 2014) ("Studies show that about one in three people carry staph in their nose, usually without any illness. Two in 100 people carry MRSA."). Also, though preventive measures can and should be put in place where possible, no measure is fail-safe even in the absence of negligence.

*Res ipsa loquitur* is meant to bridge an evidentiary gap when an injury could not have happened but for the defendant's negligence. That framework simply does not apply in a case like this one. MRSA infections can and do happen in the absence of institutional negligence. *E.g.*, Centers for Disease Control and Prevention, Methicillin-resistant Staphylococcus aureus (MRSA) Infections, General Information about MRSA in Healthcare Settings, http://www.cdc.gov/mrsa/healthcare/ (last visited March 6, 2014) ("MRSA is usually spread by direct contact with an infected wound or from contaminated hands, usually those of healthcare providers. *Also, people who carry MRSA but do not have signs of infection can spread the bacteria to others and potentially cause an infection.*") (emphasis added). Here, however, Buechel has circumstantial evidence of causation. It remains to be seen on remand whether that

evidence will be sufficient to prove causation and find that FCI-Greenville was negligent.

## *Conclusion*

We affirm the district court's verdict at trial. However, we find that the district court erred when it limited Buechel's negligence claim to the Hansen/laundry theory. Accordingly, we VACATE the judgment in favor of the United States and REMAND for further proceedings consistent with this opinion. In a new trial upon remand, the district court should allow Buechel to present evidence that FCI-Greenville negligently failed to adhere to MRSA-containment procedures that were in place in the prison in 2006, and that such failure(s) caused Buechel's MRSA infection.