In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2640

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

DANIEL BALLARD,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 15-cr-20022 — **James E. Shadid**, *Judge*.

ARGUED FEBRUARY 15, 2018 — DECIDED MARCH 19, 2018

Before BAUER, FLAUM, and MANION, *Circuit Judges*.

FLAUM, *Circuit Judge*. The government alleges Daniel Ballard fraudulently obtained construction loans from a bank. After Ballard was convicted on three counts of bank fraud, his attorney obtained a previously undisclosed audio recording of an adverse witness in Ballard's trial, made during the course of a prior, unrelated criminal investigation. Ballard moved for a new trial as a result of this newly discovered ev-

idence. The district court found certain portions of the recording favorable and material to Ballard's defense and granted him a new trial. The United States appeals. We affirm.

## I. Background

Ballard's alleged fraudulent scheme was as follows: Ballard obtained a $280,000 construction loan from the State Bank of Herscher ("SBH") to construct a residence at 3013 Stone Fence Drive in Kankakee, Illinois ("the Stone Fence Property"). After some time, he realized he was "in over his head" and requested an additional $90,000 loan to finish the property. As there was insufficient equity to cover the requested amount, SBH only lent him $20,000. To make up the balance, Ballard sought and obtained construction loans on two other properties in Bradley, Illinois: 411 North Center and 248 North Center ("the North Center Properties"). Joseph Grant was the SBH loan officer for all three properties.

To obtain funds under the loans, Ballard was required to submit Sworn Contractor's Statements and Owner's Payment Authorizations to the Kankakee County Title Company ("KCTC"). On the forms, Ballard identified the material and labor costs supposedly associated with his work on the North Center Properties. KCTC forwarded the forms to SBH, which then released funds back to KCTC to disburse to Ballard.

In total, Ballard obtained approximately $188,000 for the North Center Properties. In reality, however, no work was actually performed; instead, Ballard used the funds to complete construction on the Stone Fence Property. On March 21, 2012, an SBH employee discovered Ballard's scheme. When con-

fronted by Charles Riker, the president of SBH, Ballard allegedly acknowledged that he had misrepresented his work on the North Center Properties.

On June 2, 2015, Ballard was charged with three counts of bank fraud in violation of 18 U.S.C. § 1344. At trial, Ballard admitted that he had misdirected funds allocated for the North Center Properties to the Stone Fence Property. However, he maintained two separate legal defenses. The first was a "good faith" defense—Ballard asserted that Grant and his supervisors not only knew, but authorized Ballard's acts and pressured him to complete the Stone Fence Property. Second, Ballard claimed he did not read or sign the supposedly fraudulent loan documents prior to their submission to KCTC, and implied that someone else forged his signature.[1]

---

[1] The government sought to exclude Ballard's good faith defense, arguing that "[t]he law is pretty clear that a loan officer is not the bank. So that if a loan officer was somehow … complicit in the bank fraud, the victim is still the bank. It wouldn't be a defense for the defendant." That may be true. *See United States v. Allender*, 62 F.3d 909, 915–916 (7th Cir. 1995). However, the district court denied the government's motion, noting that Ballard's theory was not limited solely to Grant but also included his superiors at SBH. The court stated:

> [A]t some point the bank is its people, right? If everybody in the bank—let's just go crazy here—if everybody in the bank tells Beaumont's client, you go ahead, you can do this, then you can't come back later and argue that the bank is this building and not the people, right?

Thus, the district court allowed Ballard to "explore whether this goes up past Mr. Grant under his theory." The government continues to maintain that the good faith defense is precluded. Since we find the recording is favorable and material to Ballard's defense that he did not read the loan

In response, Grant testified that he never told Ballard to use the North Center loan proceeds at the Stone Fence Property or knew that Ballard was doing so. At the conclusion of the trial, a jury convicted Ballard of all three counts.

On February 8, 2017, Ballard filed a motion for a new trial. Ballard's motion centered on a surreptitious audio recording of Grant made during a prior, unrelated federal investigation centering on Scott Fitts ("the Fitts investigation"). Notably, Lawrence Beaumont—Ballard's attorney here—represented Fitts during those criminal proceedings. In 2007, Fitts obtained a personal loan from SBH, with Grant serving as his loan officer. Fitts later pleaded guilty to at least one criminal violation related to the loan. Fitts signed a cooperation agreement as part of his plea, and was later directed to audio record a conversation with Grant. In that approximately one-hour recording, Fitts and Grant discussed various matters relating to Fitts's alleged misconduct and Grant and SBH's involvement.

Ballard alleged that the day after the jury verdict was announced, Fitts called Beaumont and told him about the Grant recording. Based on the contents of the recording, Ballard moved for a new trial, arguing that the government had improperly suppressed evidence capable of impeaching Grant's credibility. The district court agreed, vacated Ballard's conviction, and ordered a new trial. According to the district court, Ballard's defense that he did not read the loan documents "may have been a much more plausible defense had the Government turned over the Grant recording prior to trial." This appeal followed.

---

statements, we need not address whether the good faith defense is plausible here.

## II. Discussion

Under *Brady v. Maryland*, a defendant can obtain a new trial if he shows that evidence suppressed by the government was favorable and material to either his guilt or punishment. *See* 373 U.S. 83, 88–89 (1963); *see also United States v. Veras*, 51 F.3d 1365, 1374 (7th Cir. 1995).[2] Whether evidence is favorable and material "is legally simple but factually complex." *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017). Indeed, "[w]e must examine the trial record, 'evaluat[e]' the withheld evidence 'in the context of the entire record,' and determine in light of that examination whether 'there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Id.* (second alteration in original) (first quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976); then quoting *Cone v. Bell*, 556 U.S. 449, 470 (2009)).

Generally, we review a grant or denial of a motion for a new trial under an abuse of discretion standard. *United States v. Lawson*, 810 F.3d 1032, 1042 (7th Cir. 2016). *Brady* violations often implicate both issues of fact and law; we review the district court's factual findings for clear error, and legal conclusions de novo. *United States v. Griffin*, 652 F.3d 793, 797 (7th Cir. 2011); s*ee also United States v. Freeman*, 650 F.3d 673, 678–79 (7th Cir. 2011) ("The district court abuses its discretion when it makes an error of law or when it makes a clearly erroneous finding of fact."); *United States v. Wolf*, 860 F.3d 175, 189 (4th Cir. 2017) ("With regard to the district court's *Brady* ruling, we apply de novo review to its legal determinations and clear error review to its factual findings.").

---

[2] On appeal, the government does not contest that the Grant recording was suppressed; thus, we need not further analyze that factor.

### A. Favorability

Evidence is favorable "either because it is exculpatory, or because it is impeaching." *Turner*, 137 S. Ct. at 1893 (quoting *Strickler v. Greene*, 527 U.S. 263, 281–282 (1999)). Evidence need only have "some weight" or "tendency" to be favorable to the defendant. *Kyles v. Whitley*, 514 U.S. 419, 451 (1995).

The district court found the Grant recording supported four reasonable inferences: (1) Grant disclosed to Fitts that a Suspicious Activity Report ("SAR") had been created for one of his transactions[3]; (2) SBH filled out the SAR related to Fitts's loan with false information; (3) Grant accepted signed, blank loan applications from Fitts; and (4) Grant believed he was under criminal investigation. The government contends that these factual findings are not supported by the record. We disagree. "Under [the clear error] standard, we will not reverse unless, after reviewing all the evidence, we are left with 'the definite and firm conviction that a mistake has been committed.'" *Buechel v. United States*, 746 F.3d 753, 756 (7th Cir. 2014) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). Upon a thorough review of the record, including the Grant recording, we have no such conviction here. The district court's four conclusions "are 'plausible in

---

[3] A SAR is a report made by a financial institution about suspicious, or potentially suspicious activity, to prevent fraud, money laundering, and other nefarious activities. In the United States, financial institutions and their employees can face civil and criminal penalties for failing to properly file a SAR or for failing to file them within 30 calendar days of detection of behavior that might constitute the basis for their filing. *See generally* 31 U.S.C. §§ 5311–32. Disclosure of the existence of a SAR is prohibited. 31 U.S.C. § 5318(g)(2).

light of the record viewed in its entirety.'" *Id.* (quoting *Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1028 (7th Cir. 2002)). Thus, we will not disturb them.

Based upon these factual findings, the district court made a legal determination that the Grant recording provided "ample fodder for impeaching Grant's credibility." Once again, we cannot say that such a finding was in error. For one, some of the acts arguably admitted by Grant in the recording—such as falsifying a SAR and accepting signed, blank loan applications—are probative to attacking his character for truthfulness. *See* Fed. R. Evid. 608(b)(1). Additionally, the recording supports an inference that Grant not only admitted to illegal activity, but also thought he was being criminally investigated for his misconduct. Because Grant was never prosecuted, it can be further inferred that Grant received some benefit from the government. Thus, Grant was arguably biased in favor of the prosecution, especially given that many of the main characters in the Fitts investigation took part in the Ballard investigation—most notably the prosecutor, investigating agent, and Grant. If believed, such a motive would damage Grant's credibility as a witness against Ballard. That's because, at trial, Grant's testimony directly contradicted Ballard's statement as to whether Grant and SBH sanctioned Ballard's conduct. If a jury did not believe Grant's testimony, it might have found Ballard generally more credible. This may have made Ballard's defense that he did not read the loan statements more believable.

**B. Materiality**

We must next address whether the favorable evidence is material. A statement is material if "there is a reasonable probability that, had the evidence been disclosed, the result of the

proceeding would have been different." *Cone*, 556 U.S. at 470. In order to have "[a] 'reasonable probability' of a different result," the suppressed evidence must "undermine[] confidence in the outcome of the trial." *Turner*, 137 S. Ct. at 1893 (quoting *Kyles*, 514 U.S. at 434).

As the district court reasoned, "[t]he Defense was entitled to cross-examine Grant about his credibility, and had the jury found Grant incredible, it is not a stretch to see the verdict could have been different." The dissent correctly notes that twelve other witnesses testified at trial. And it is true that it is "the rare case in which impeaching evidence warrants a new trial, because ordinarily such evidence will cast doubt at most on the testimony of only one of the witnesses." *United States v. Taglia*, 922 F.2d 413, 415 (7th Cir. 1991). However, as we continued in *Taglia*, "[that] practice should not be taken to imply … the district judge is helpless to grant a new trial. District judges do not in fact consider themselves helpless in such circumstances, and they are right not to." *Id.* 415–16. Indeed, a trial judge is best equipped to "develop[] a feel for the impact of the witnesses on the jury—and how that impact might have been different had the government played by the rules" and disclosed the suppressed evidence. *United States v. Boyd*, 55 F.3d 239, 242 (7th Cir. 1995). We, "confined to reading the transcript, cannot duplicate" such a nuanced sense on appeal. *Id.* Thus, "unless we are convinced that [the trial judge in fact] was mistaken"—and we are not convinced here—"we have no warrant to reverse." *Id.*

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

MANION, *Circuit Judge*, dissenting. Daniel Ballard needed money to complete an over-budget construction project, so he obtained a loan ostensibly to improve two other properties. When it was discovered that he never did any work on the other properties, he was investigated for bank fraud. He was eventually charged with making false representations to a title company in order to obtain a disbursement of funds from the fraudulent loan. His main defense at trial seems to have been that he did not bother to read the admittedly false Sworn Contractor's Statements submitted to the title company to obtain the disbursement. Implausible as that may be on its face, the government refuted the defense by calling multiple witnesses—including an FDIC special agent and the former bank president—who told the jury that Ballard had admitted he knew the representations he made in Sworn Contractor's Statements were false. The jury convicted him.

But after the trial, a recording surfaced of a 2009 conversation between Ballard's loan officer (and government witness) Joe Grant and convicted fraudster Scott Fitts. In the recording, the two men discussed a loan Fitts had obtained from Grant that eventually led to Fitts' conviction. Ballard moved for a new trial. The district court held that (1) the recording was relevant as potential impeachment of Grant; and (2) the potential impeachment was material because it may have made Ballard's "I didn't read the Statements" defense "much more plausible." As a result, it ordered a new trial. The court today affirms that decision. I cannot agree. Because I conclude that disclosure of the recording before trial would have had no effect on the outcome, I would reverse the decision below and remand with instructions to reinstate the jury verdict.

As the court recognizes, material evidence for the purposes of *Brady v. Maryland*, 373 U.S. 83 (1963), is "evidence that (if disclosed in a timely way) would have created a reasonable probability of a different result." *United States v. Wilson*, 237 F.3d 827, 832 (7th Cir. 2001). The question before us is whether the impeachment evidence contained in the recording is significant enough "to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). For several reasons, I believe it is not.

First, despite Ballard's representations to the contrary, the recording is not "exculpatory evidence." "Exculpatory" refers only to evidence "tending to establish a criminal defendant's innocence." Black's Law Dictionary 577 (7th ed. 1999). The recording has nothing to do with this case, and thus does not tend to prove that Ballard is innocent. Its only potential value is as impeachment of Grant. But "[t]he practice has been to deny new trials where the only newly discovered evidence was impeaching." *United States v. Taglia*, 922 F.2d 413, 415 (7th Cir. 1991). "[I]t will be the rare case in which impeaching evidence warrants a new trial, because ordinarily such evidence will cast doubt at most on the testimony of only one of the witnesses." *Id.* That is certainly the case here.[1] And while Ballard attempts to cast Grant as the government's "key witness," in reality he was just one of thirteen witnesses. Several other

---

[1] The court is correct that district courts are not helpless to grant new trials because of suppressed impeachment evidence. Yet the lesson of *Taglia* is that withheld impeachment evidence impugning the credibility of only one witness will rarely be enough to undermine confidence in the verdict. That's especially true when, as in this case, the credibility of the impeached witness is irrelevant to the defense asserted.

witnesses established the facts necessary for Ballard's conviction: that Ballard knowingly made false representations to the title company in order to obtain the money.

Second, and perhaps most importantly, Grant's credibility is *irrelevant* to the dispositive issue: whether Ballard read the Sworn Contractor's Statements and knew they were false. Ballard's counsel indicated at trial that he did not intend to argue that Grant knew the representations made in the Statements were false. That is the missing link in the district court's analysis. After all, if *Grant* didn't know whether the Statements were false, it follows that impeaching Grant's credibility wouldn't affect the government's ability to prove that *Ballard* knew they were false. In other words, the district court's assertion that further impeachment of Grant would have helped Ballard's "I didn't read the Statements" defense was simply wrong. I would not defer to that finding because it lacks record support. See *United States v. Savage*, 505 F.3d 754, 760 (7th Cir. 2007) (the abuse of discretion standard means "we will not reverse unless the record contains no evidence upon which the trial judge rationally could have based his decision.").

Third, the recording's weight is further compromised because it would be inadmissible at a new trial. Federal Rule of Evidence 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." So although Ballard's counsel might make use of the recording to cross-examine Grant at a new trial, counsel would be stuck with Grant's answers. See *United States v. Veras*, 51 F.3d 1365, 1375 (7th Cir. 1995). The jury will never hear the recording.

That makes the recording much less valuable than Ballard would like to admit.

Finally, I must address Ballard's continuing assertions that his true defenses have been that the State Bank of Herscher is a "crooked bank" and that Grant knew exactly what was going on with the Ballard loan. If these were valid defenses to bank fraud, then perhaps Grant's credibility—and specifically the subject matter of the recording—would be relevant to the outcome of the trial. But it is settled law that "the loan officer was in on it" is not a defense to bank fraud. See *United States v. Allender*, 62 F.3d 909, 915–16 (7th Cir. 1995) (finding no error with a jury instruction to that effect). And Ballard provides no authority to support his theory that the supposed corruption all the way to the top of the bank, even if proven, would absolve him of responsibility for the misrepresentations.[2] With these "defenses" out of the picture, further impeachment of Grant would not help Ballard in the least.

I conclude that the existence of the Grant-Fitts recording does not undermine confidence in the verdict against Ballard. Therefore, I would reverse the decision to grant a new trial and remand with instructions to reinstate the guilty verdict. I respectfully dissent.

---

[2] Failure to cite authority (whether it be from the record or case law) for his assertions is a common problem in Ballard's brief. Worst of all, Ballard fails to identify anything Grant said at trial that, had the jury disbelieved it, would have changed the result. "We will not scour a record to locate evidence supporting a party's legal argument." *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005). In my view, Ballard failed to develop several points and waived any response he might have had to many of the government's well-reasoned arguments.