2024 IL App (2d) 230005-U
No. 2-23-0005
Order filed March 13, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| OLGA F. CHTIGUEL | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-L-921 |
| | ) | |
| MARIA J. CORDOVA-MORA and | ) | |
| FITNESS INTERNATIONAL, LLC, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Fitness International, LLC, | ) | Jorge L. Ortiz, |
| Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in granting defendant fitness facility's motion to dismiss, because defendant's failure to enforce a nonexistent sauna dress code was not the proximate cause of plaintiff's injuries, which she received from a violent confrontation with another gym patron. Additionally, defendant did not have a duty to protect plaintiff from the criminal attack, as it was not foreseeable and protecting against it would have been unduly burdensome. Affirmed.

¶ 2    Plaintiff Olga F. Chtiguel (*pro se*) appeals the trial court's order granting defendant Fitness

International, LLC's (Fitness) motion to dismiss pursuant to section 2-619(a)(9) of the Code of

Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2022)). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Chtiguel was a member of the LA Fitness gym in Round Lake Beach, which was operated by Fitness. On January 31, 2020, Chtiguel got into an altercation with defendant Maria J. Cordova-Mora in the women's sauna, which arose after Chtiguel confronted Cordova-Mora about wearing proper sauna attire. Chtiguel alleged that during the altercation Cordova-Mora struck her in the face and back with Cordova-Mora's water bottle and cellphone. Cordova-Mora was arrested and later pled guilty to misdemeanor battery.

¶ 5     On December 22, 2021, Chtiguel brought an action against Cordova-Mora and Fitness. Fitness moved to dismiss the original complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) due to a lack of sufficient fact pleading. Chtiguel moved to amend and was allowed to file her first amended complaint on April 20, 2022. Following a second motion to dismiss by Fitness, the trial court dismissed counts II-IV of the first amended complaint without prejudice.

¶ 6     On August 22, 2022, Chtiguel filed her second amended complaint alleging battery against Cordova-Mora (count I), personal injury due to negligence (count II), personal injury due to negligent security (count III), personal injury due to negligent supervision (count IV), violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2022)) (count V), violation of the Physical Fitness Services Act (815 ILCS 645/1 *et seq.* (West 2022)) (count VI), breach of contract (count VII), fraud (count VIII), and fraudulent concealment (count IX). With the exception of counts I and III, Chtiguel's claims essentially alleged that Fitness's failure to enforce the sauna dress code contained in the membership agreement executed between

Chtiguel and Fitness, and to expel Cordova-Mora for violating the facility's rules, was the cause of Chtiguel's injuries. Attached to Chtiguel's complaint was a membership agreement executed by Chtiguel and Fitness.

¶ 7    Regarding the altercation, Chtiguel alleged in her complaint that on January 31, 2020, around 8:15 p.m., she finished her workout, undressed, showered, and went into the sauna, which adjoined the women's locker room. Cordova-Mora then entered the sauna, still wearing her workout clothes and not having showered. Chtiguel asked Cordova-Mora why she was using the sauna in her workout clothes and suggested she Google how to use a sauna. Cordova-Mora responded by yelling profanities, and Chtiguel laid down on the bench ignoring her.

¶ 8    Around 8:50 p.m., Chtiguel got up to leave. While her back was turned, Cordova-Mora attacked Chtiguel while holding a cellphone and water bottle, hitting Chtiguel in the face and back. Chtiguel pushed Cordova-Mora and grabbed her ponytail. A custodian then arrived and asked what happened. As the custodian was entering the sauna, Cordova-Mora ran out yelling something in Spanish. Chtiguel pursued Cordova-Mora out into the gym, but could not catch her.

¶ 9    Chtiguel claimed to have suffered injuries including disfigurement and loss of facial muscle in the left side of her face. She also claimed to be suffering from post-traumatic stress disorder.

¶ 10    On September 28, 2022, Fitness filed a motion seeking to dismiss counts II-IX pursuant to section 2-619(a)(9) of the Code. Attached to the motion was a handwritten statement made by Cordova-Mora to Round Lake Beach police. In its motion Fitness argued as an affirmative matter that the membership agreement did not contain any provisions regarding what clothing, if any, members were to wear in the sauna, and that the provisions Chtiguel cited in her complaint referred to the whirlpool hot tub. Fitness next argued that based on Cordova-Mora's statement, the

altercation arose because Chtiguel confronted Cordova-Mora and called her a racial slur, and therefore even if Fitness were obligated to enforce a sauna dress code, the failure to do so was not the proximate cause of Chtiguel's injuries.

¶ 11    Cordova-Mora's statement to the police was as follows:

"On Friday afternoon I was at L.A. Fitness gym working out and at the end of my workout I went into the sauna to relax and be in the heat to make myself sweat when a lady sat up and said to me 'can I ask you something' and I was like 'yeah.' She then proceeded to say 'why do people like me go in the sauna with our clothes and shoes on after working out, that, that is not how we use a sauna.' She started to act rude and give attitude saying, 'do you not know how a sauna works? Look it up on the internet how to use one cause clearly you don't know how to.' I continued to be nice and state how it is a public gym and there are no rules on how to use a sauna, I ended up swearing and she started laughing about it and saying 'oh, and your vocabulary is extraordinary.' I started to get upset with how rude she was being so I gave attitude back at her stating how I have freedom of speech and it's my mouth so I can speak how I'd like to, specially [*sic*] if someone is being disrespectful towards me. She ends up laughing at my face and underneath her breath I heard the words 'Beaners' so that really upset me how she started saying racial slurs to me. I ended up saying 'excuse me, what did you just say?' She stayed quiet and kept laughing and laughing. A lady had walked in with gym clothes and shoes as well just like me, and the lady who was talking to me looks over and continues to laugh because she had just came at me for all that and another person had just walked in the same way. She ends up standing up looking towards me still smiling/laughing and started walking my direction so I felt threatened and I ended up hitting her in the face/head with my hands 4 times and then

I stopped. I turned around to collect my things from the seat (my glasses, phone, and water bottle) and as soon as I was doing that she punched me in the back of my head about 2 times and pulled on my hair for about a minute. She ended up letting go off [*sic*] me and I started leaving to avoid more conflict with her and I just grabbed my stuff from my locker and left the gym."

¶ 12 In her response to Fitness's motion to dismiss, Chtiguel denied using a racial slur against Cordova-Mora.

¶ 13 On December 14, 2022, the trial court granted Fitness's motion to dismiss and dismissed counts II-IX with prejudice. The trial court found that, as an affirmative matter, no breach of the membership agreement caused Chtiguel's injuries. It explained that Chtiguel's injuries were not foreseeable and therefore there was no duty that was breached to support a claim of negligence. The court found that Fitness was neither the legal nor factual proximate cause of Chtiguel's injuries. There was no factual or legal basis for Chtiguel's claims of consumer fraud, violation of the Physical Fitness Services Act, and fraudulent concealment. Finally, the factual and legal cause of Chtiguel's injuries was the unforeseeable intervening act of a third party.

¶ 14 Chtiguel timely appealed.

¶ 15                                    II. ANALYSIS

¶ 16 Chtiguel appeals the trial court's order granting Fitness's motion to dismiss pursuant to section 2-619(a)(9) of the Code. On appeal she argues, *inter alia*, that the membership agreement did provide rules regarding sauna dress code and Fitness's failure to enforce its rules and expel Cordova-Mora for violating them caused her injuries. She argues that, as a business invitee, a special relationship existed between herself and fitness, which instilled in Fitness the duty to protect her from violence and third party attacks, and that such attacks were foreseeable as there

had been several instances of criminal activity at the Round Lake Beach LA Fitness facility and other facilities across the country. Further, she maintains that she did not call Cordova-Mora a racial slur.

¶ 17    A motion to dismiss brought pursuant to section 2-619 admits the sufficiency of the claim but asserts a defense outside of the complaint which defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. When proceeding under a section 2-619 motion, the movant concedes all well-pleaded facts set forth in the complaint, but not conclusions of law or conclusory factual allegations not supported by specific allegations of fact. Section 2-619(a)(9) of the Code allows for dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). A section 2-619(a)(9) motion to dismiss allows for issues of law and easily proven issues of fact related to the affirmative matter to be disposed of early in litigation. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 30.

¶ 18    If the "affirmative matter" asserted does not appear on the face of the attacked pleading, the motion must be supported by an affidavit or other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). Once a defendant has satisfied this initial burden, the burden shifts to the plaintiff, who must establish the asserted defense is either "unfounded or requires the resolution of an essential element of material fact before it is proven." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). On appeal we "consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Id.* at 116-17. An appeal from such a dismissal is reviewed *de novo*. *Kedzie*, 156 Ill. 2d at 116.

¶ 19            A. The Membership Agreement did not Include a Sauna Dress Code

¶ 20    With the exception of count III (personal injury due to negligent security), all of Chtiguel's claims—though sounding in a variety of legal theories—fundamentally allege that Fitness's failure to enforce its rules regarding use of the sauna as set forth in the membership agreement proximately caused Cordova-Mora to batter Chtiguel.

¶ 21    Chtiguel asserts that the membership agreement she executed with Fitness set forth rules for how gym patrons were to use the sauna, specifically that they were required to wear swimming clothes and shower before using the sauna.

¶ 22    Rule 4 of the membership agreement states that members are required to wear "proper swimming attire when using any club pool or spa." Rule 5 states that, "In addition to wearing proper swimming attire, you must shower before using any club pool or spa. Persons with open wounds may not use a club pool or spa."

¶ 23    Chtiguel maintains that the use of the word spa refers to the sauna, whereas Fitness maintains that spa refers to the facility's whirlpool hot tub.

¶ 24    The interpretation of a contract is question of law which we review *de novo*. The best indication of the parties' intent is a contract's language. *Virginia Surety Co., Inc. v. National Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). If a contract's language is unambiguous, it should be given its plain and ordinary meaning. *Id.* A contract is ambiguous when its language is susceptible to more than one interpretation. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). Whether a contract is ambiguous is a question of law. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 154 (2004). A contract must be construed as a whole, viewing particular terms or provisions in the context of the entire agreement rather than in isolation. *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 77.

¶ 25    Merriam-Webster provides multiple definitions for the word spa:

"1 a: a mineral spring b: a resort with mineral springs 2: a fashionable resort or hotel 3: *NewEng*: SODA FOUNTAIN 4: a commercial establishment providing facilities devoted esp. to health, fitness, weight loss, beauty, and relaxation 5: a hot tub with a whirlpool device[.]" *Spa*, Merriam-Webster's Collegiate Dictionary 1194 (11th ed. 2003).

Notably none of these definitions refer to a sauna (a dry heat bath, *id.* 1105), and one of the definitions specifically refers to a whirlpool hot tub. Given the fact that rules 4 and 5 mention the wearing of swimming attire and the spa is only mentioned in conjunction with the pool, it is clear that the rules refer to the facility's whirlpool hot tub and not the sauna.

¶ 26 Further, nothing else in the rules and regulations section of the membership agreement mentions the sauna, nor does the membership agreement include a promise from Fitness that it would enforce its rules against other gym patrons. Accordingly, to the extent Chtiguel's claims rely upon the membership agreement containing a dress code for use of the sauna, they must fail.

¶ 27 B. Failure to Enforce Dress Code was not the Proximate Cause of Chtiguel's Injuries

¶ 28 Even if were we to assume that the membership agreement did include a dress code for the sauna which Fitness was obligated to enforce—or that Fitness materially misrepresented the existence and/or enforcement of such a dress code—Chttguel's claims for breach of contract, negligence, common law fraud, and consumer fraud all require that Fitness's actions be the proximate cause of her injury. See *Turcios v. DeBruler Co.*, 2015 IL 117962, ¶ 27 (proximate cause is a fundamental principle applicable to breaches of contract, negligence, as well as intentional torts); *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501 (1996) ("a valid claim must show that the consumer fraud proximately caused plaintiff's injury").

¶ 29 As for count VI, Chtiguel's claim arising from alleged violations of the Physical Fitness Services Act, section 11 of the Act creates a private cause of action for violations of the Act: "Any

customer injured by a violation of this Act may bring an action for the recovery of damages." 815 ILCS 645/11 (West 2022).

¶ 30     Our supreme court has construed a similar provision from the Consumer Fraud and Deceptive Business Practices Act as requiring that "a private individual suing under the Act also demonstrate that the fraud complained of proximately caused plaintiff's injury." *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373 (1998); see also 815 ILCS 505/10a(a) ("Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person.").

¶ 31     Further, both statutes prohibit unfair and deceptive acts in the course of dealing with consumers (815 ILCS 645/10; 815 ILCS 505/2). Accordingly, we construe section 11 of the Physical Fitness Services Act as requiring that the violation complained of be the proximate cause of plaintiff's injury.

¶ 32     "Although the issue of proximate cause is ordinarily a question of fact determined by the trier of fact, it is well settled that it may be determined as a matter of law by the court where the facts as alleged show that the plaintiff would never be entitled to recover." *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257-58 (2004). Proximate cause encompasses two distinct requirements: cause in fact and legal cause. *Young v. Bryco Arms*, 213 Ill. 2d 433, 446 (2004). Cause in fact concerns whether the defendant's conduct was a material element and substantial factor in bringing about the injury, whereas legal cause concerns foreseeability and whether the injury is of a type that a reasonable person would see as a likely result of their conduct. *Abrams*, 211 Ill. 2d at 258. "A defendant's conduct is a 'cause in fact' of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury" *Id.*

¶ 33    In the instant case, Cordova-Mora claims she struck Chtiguel because Chtiguel called her a racial slur, which Chtiguel denies. In either case, the cause of the battery was either Chtiguel calling Cordova-Mora a racial slur, or Cordova-Mora mishearing Chtiguel. The failure of Fitness to enforce any alleged rules regarding sauna usage cannot be said to be a material element or a substantial factor in causing either. Accordingly, Fitness was not the cause in fact of the injury.

¶ 34    Nor was Fitness the legal cause of Chtiguel's injury. "The negligence of a defendant will not constitute a proximate cause of a plaintiff's injuries if some intervening act supersedes the defendant's negligence, but if the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability." *Coleman v. Provena Hospices*, 2018 IL App (2d) 170313, ¶ 25.

¶ 35    In the instant case, Chtiguel's injuries were the result of an intentional battery by Cordova-Mora. Cordova-Mora's attack on Chtiguel was not a reasonably foreseeable result of the failure to implement, enforce, or disclose rules regarding proper sauna attire. Most individuals are not so passionate about sauna usage that acts of physical violence arising from arguments regarding proper attire would be a foreseeable consequence of lax dress code enforcement.

¶ 36    Under these facts, we conclude that, as a matter of law, Chtiguel was not entitled to recover from Fitness, as Fitness was not the proximate cause of her injuries. Accordingly, the trial court did not err in dismissing counts II, IV-IX.

¶ 37                    C. Fitness had no Duty to Protect Chtiguel

¶ 38    Regarding Chtiguel's negligent security claim, Chtiguel alleged that Fitness was negligent for failing to provide adequate security personnel and security devices to prevent or stop Cordova-Mora from attacking Chtiguel and causing her injury.

¶ 39 Generally, a possessor of land owes no duty to protect lawful entrants from criminal attacks by third parties, except where the possessor and the entrant stand in a special relationship, such as that of business invitor and invitee. *Cooke v. Maxum Sports Bar & Grill, Ltd.*, 2018 IL App (2d) 170249, ¶ 55. Whether a duty exists is a question of law we review *de novo. Id.* ¶ 54. "Before a duty to protect will be imposed on a possessor of land, the court must also consider (1) whether the criminal attack was reasonably foreseeable, (2) the likelihood of the injury, (3) the magnitude of the burden to guard against the injury, and (4) the consequences of placing that burden upon the possessor." *Id.* ¶ 56. "A criminal attack by a third person is reasonably foreseeable when the circumstances are such as to put a reasonably prudent person on notice of the probability of an attack or when a serious physical altercation has already begun." *Haupt v. Sharkey*, 358 Ill. App. 3d 212, 219 (2005)

¶ 40 Chtiguel argues that the attack was foreseeable because there had been 311 incidents involving police at the Round Lake Beach LA Fitness between 2009 and 2022, citing to a Freedom of Information Act report she obtained form the Village of Round Lake Beach, and which was attached to her response to Fitness's motion to dismiss. The report lists the date of the incident and what crime police were responding to. Several of the entries are for locations other than the LA Fitness, and some of the listed incidents have multiple entries. The report provides no details on the circumstances of the crimes, and the majority of the entries are for theft. There were 11 incidents of battery including the instant case, making for an average of less than one incident per year.

¶ 41 Chtiguel also cites to news reports of other acts of violence which occurred at various other LA Fitness locations throughout the country. These reports do not appear in the record and are of little relevance as they did not occur at the location in question. Despite Chtiguel's contentions to

the contrary, nothing in the record indicates that there was anything prior to the altercation in the sauna that should have put a reasonably prudent person on notice of the probability of an attack. The incident occurred entirely in the sauna with no prior indication of violence.

¶ 42 Further, the magnitude of the burden to guard against Chtiguel's injury in the instant case would be unduly burdensome. Both Chtiguel and Cordova-Mora's accounts agree that Cordova-Mora struck Chtiguel in the head before Chtiguel grabbed Cordova-Mora's hair. Cordova-Mora's account states that Chtiguel held Cordova-Mora's hair for about a minute. Neither account indicates that Cordova-Mora struck Chtiguel after Chtiguel had a hold of Cordova-Mora's hair. Then, according to Chtiguel, a custodian arrived at the sauna door to ask what happened, and as the custodian opened the door, Cordova-Mora ran out. Chtiguel was quick to defend herself from the attack, a member of Fitness's staff arrived shortly after the fight started, and Cordova-Mora fled once the staff member arrived.

¶ 43 Chtiguel was struck in the face in the opening seconds of the attack. Short of having security guards stationed in the sauna itself, a measure which would be unduly burdensome and which still might not have stopped Cordova-Mora's initial blows, there is nothing more Fitness could have done to prevent Chtiguel's injuries. Accordingly, the trial court did not err in dismissing count III.

¶ 44                                    III. CONCLUSION

¶ 45 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 46 Affirmed.